McCALEB, Justice.
 

 Plaintiffs, the six grandchildren of Mrs. Angie King, brought this suit to be recognized as her sole heirs and, as such, entitled to the ownership of a 50-acre tract of land in St. Helena Parish, of which she died possessed. Joined as defendants to the action are Mrs. Mona Mae Westmoreland Jenkins, who has been placed in possession of approximately 22 acres of the 50-acre tract as legatee under a will of the late James Rafe King, an uncle of plaintiffs; Mrs. Charlene Westmoreland McDaniel, who acquired 20 acres of the said 50-acre tract by purchase from James Rafe King in 1951, and Cecil King, who also acquired 8 acres of the 50-acre tract by purchase from James Rafe King in 1951.
 

 In resisting the demand, Mrs. Charlene Westmoreland McDaniel and Cecil King, the transferees of James Rafe King, contend that they purchased on the faith of the public records without notice of plaintiffs’ claim and are, therefore, protected by the law of registry. And they joined with the other defendant, Mrs. Mona Mae Westmoreland Jenkins, in pleading the five-year peremption applicable to tax deeds provided by Section 11 of Article 10 of the Constitution. All defendants also interposed pleas of estoppel founded on plaintiffs’ laches in failing to assert their claim within a reasonable time following the acquisition of a tax title by James Rafe King.
 

 The district judge overruled all of the special pleas and, after a trial on the merits, maintained plaintiffs’ action, holding that they collectively own an undivided one-half interest in the 50 acres involved. Judgment was entered accordingly and defendants have appealed.
 

 The facts of the case are not disputed. Mrs. Angie King died intestate in 1921 leaving as her sole heirs her son, James Rafe King, and six grandchildren, the plaintiffs herein, who were the children of a predeceased son, Joseph Coot Vaughn. At the time of her death, she was the owner of the 50-acre tract of land which is the subject matter of the suit. Mrs. King’s succession was never opened and, following her death, her son, James Rafe King, who had been raised on the 50-acre tract, was permitted to remain in sole possession without payment to his coheirs for his use of the property or to account for the revenues derived therefrom. James Rafe King paid the taxes on the land which was assessed on the parish assessment roll to the heirs of Mrs. Angie King. However, due to his failure to pay the taxes for the year 1928, the property was advertised for sale and King purchased it at the tax sale, obtaining a tax deed from the Sheriff dated July 1, 1929, which was duly registered in the conveyance office of St. Helena Parish. Thereafter, King continued to live on the
 
 *187
 
 property and paid all taxes subsequently falling due.
 

 On June 30, 1951, King transferred by authentic act 20 acres of the land to Mrs. McDaniel for a cash consideration of $500. And, on July 7th of the same year, he sold 8 other acres contained in the tract to Cecil King, also by authentic act, for $100 ■cash.
 
 [1]
 

 James Rafe King remained in possession ■of the balance of the land (approximately 22 acres) until his death on July 20, 1953. Shortly thereafter, his olographic will was probated in the district court in St. Helena Parish and his universal legatee, Mrs. Jen-Idns, was recognized as owner of all the property of which he died possessed.
 

 It is seen from the above facts that the six plaintiffs were coheirs of an undivided one-half interest in the succession ■of their grandmother, Mrs. Angie King, through representation of their father, Joseph Coot Vaughn. Plaintiffs’ uncle, James Rafe King, inherited the other undivided •one-half interest. Hence, when James Rafe King purchased the 50-acre tract belonging to Mrs. King’s succession at tax sale, he did not thereby acquire an indefeasible title as there still remained equities between plaintiffs and him which existed by reason ■of their coownership of the land.
 

 It is the established jurisprudence that property sold to one coowner or coheir for delinquent taxes is regarded, so far as his coowners are concerned, as merely a payment of the taxes for all and any one or more of them may be reinvested with title by making claim on the tax purchasing coowner within a reasonable time and paying his proportionate share of the adjudication and subsequent installments. Harris v. Natalbany Lumber Co., 119 La. 978, 44 So. 806; Vestal v. Producer’s Oil Co., 135 La. 984, 66 So. 334; Cooper v. Edwards, 152 La. 23, 92 So. 721; Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Skannal v. Hespeth, 196 La. 87, 198 So. 661 and Keller v. Haas, 209 La. 343, 24 So.2d 610. However, it is important to note, as a careful examination of the above cited cases will reveal, that a coowner who purchases at a tax sale acquires the legal title to the adjudicated property and that the right of his coowner to be reinvested with legal title is not a statutory or constitutional right but, rather, rests exclusively upon equitable considerations. See Cooper v. Edwards, supra; Harrell v. Harrell, 174 La. 957, 142 So. 138 and other cases above cited. Principles of equity are thus invoked to protect such coowners by not permitting the tax purchasing coowner to profit at their expense provided, of course, that they act with diligence.
 

 
 *189
 
 The jurisprudence on the subject discloses that there are two situations in which a coowner may lose his equitable right to have his legal title restored by paying to the tax purchasing coowner his proportionate share of the adjudicated price together with all taxes which have subsequently become due. Those instances are (1), when the coowner has not come forward to regain his rights within a time considered reasonable under all circumstances presented in the particular case, he is held to be estopped by his laches from asserting his claim and (2), whenever the rights of third parties have intervened.
 

 In the case at bar, both Mrs. McDaniel and Cecil King are third purchasers without notice and it would therefore appear that plaintiffs’ suit must fail as to them.
 

 The trial judge concluded that, although Mrs. McDaniel and Cecil King were third parties, they could derive no superior right from their status for they were chargeable with notice of plaintiffs’ latent and unrecorded equities by reason of the identity of the family name of the tax debtors (heirs of Mrs. Angie King) in the tax deed and that of the tax purchaser (James Rafe King) and, further, that they had actual knowledge dehors the tax deed of plaintiffs’ equities as they admitted in their testimony that they knew that Mrs. Angie King left other heirs besides James Rafe King, to whom they were related by blood.
 

 This was error. Ever since the landmark decision of McDuffie v. Walker, 125 La. 152, 51 So. 100, it has been the settled public policy, which is founded upon the articles of our Civil Code, that a party dealing with immovable property need look only to the public records and, if such records do not show the recordation of any adverse claim sufficient to put such third party on notice, he obtains a good title notwithstanding that he had personal knowledge of defects therein. Schneidau. v. New Orleans Land Co., 132 La. 264, 61 So. 255; Humphreys v. Royal, 215 La. 567, 41 So.2d 220 and see also Thompson v. Thompson, 211 La. 468, 30 So.2d 321.
 

 Thus, if it be conceded that Mrs. McDaniel and Cecil King had actual knowledge that plaintiffs had certain equitable claims against the tax purchaser, James. Rafe King, this circumstance would not defeat their right to rely on the public-records. And it is clear that the public records did not furnish notice to these-purchasers of the equitable rights of plaintiffs to have their title restored by James Rafe King. The succession of Mrs. Angie King was never opened and there was nothing of record respecting plaintiffs’ seizin as heirs of Mrs. King. While it is. true that the tax deed shows that the tax debtors are the heirs of Mrs. Angie King, there is no document of record disclosing-the identity of those heirs or that the tax purchaser, James Rafe King, was one of
 
 *191
 

 them. In the
 
 absence of the registry of •such a document, the vendees of James Rafe
 
 King
 
 are not put on notice that he was a •coheir or coowner of the property. The identity of family name, without more, is not sufficient in law to constitute notice.
 

 Counsel for plaintiffs contend that the public records doctrine has no application to this case due to the fact that plaintiffs were forced heirs, being the coheirs of James Rafe King. The case of Long v. Chailan, 187 La. 507, 175 So. 42, is said to support this position.
 

 The point is not well founded and is not •sustained by the decision in Long v. Chailan. There, a certain tract of land standing in the name of Henry F. Long, Sr., which formerly belonged to the community existing between himself and Mrs. Lou Toler Cole Long, was seized by the sheriff under a writ of fieri facias to satisfy a judgment secured against Mr. Long on a debt contracted subsequent to the dissolution of •the community by the death of his wife. The property, which was purchased at •sheriff’s sale by one Signor, was afterwards acquired through mesne conveyances by the defendant and plaintiffs (the descendants of Mrs. Long) brought suit to set the sales aside on the ground that, since Mrs. Long’s children had inherited her one-half interest in the property at her death, their interest in said property could not be legally seized .and sold for the personal debt of Mr. Long and the purchaser at sheriff’s sale obtained no title thereto. The defendant pleaded that she was a third purchaser who had acquired the property on the faith of the public record and that, inasmuch as the interest of the heirs of Mrs. Long had not been recorded, her ownership of the land could not be burdened by the claims of these heirs. But the court overruled defendant’s contention on the ground that the doctrine of McDuffie v. Walker, supra, cannot be construed so as to defeat the rights of heirs who inherit from their mother her half interest in the community property bought in the name of her husband.
 

 The conditions obtaining in Long v. Chailan provide the only recognized exception to the rule announced in McDuffie v. Walker. Those conditions are not presented in the case at bar. Mrs. McDaniel and Cecil King are not attempting to avoid plaintiffs’ inheritance of the property from their grandmother on the theory that that inheritance does not appear on the public record. Their inheritance and seizin of the property by operation of law is not questioned even though it was not recorded. But it is shown that, since their inheritance, plaintiffs have been divested of their legal title to the property by the tax sale which appears on the public record, the purchaser at that tax sale having acquired full legal title subject to the right of redemption by the tax debtors. The right of redemption having long since expired, the legal title in the tax purchaser, James Rafe King,
 
 *193
 
 became absolute insofar as third persons were concerned and such persons, who dealt on the faith of the public records, obtained a valid legal title from him without being subjected to whatever equitable claims plaintiffs might have had against him.
 

 Forasmuch as we deduce that Mrs. McDaniel and Cecil King have acquired a good title, it is unnecessary that we consider their plea of the five-year peremption of the tax deed provided by Section 11 of Article 10 of the Constitution. Nevertheless, it is apt to observe that, unless this peremption began to run from the time James Rafe King recorded his tax deed in 1929, it would not have accrued as to Mrs. McDaniel and Cecil King for they did not obtain possession under the deeds in their favor until 1951, or less than five years from the filing of this suit.
 

 With respect to the plea of the five year peremption of Mrs. Jenkins, legatee and successor of James Rafe King, we find that it was properly overruled by the trial judge. This is because the running of the peremption was suspended during all of the time that James Rafe King remained in possession of the land. It is well settled that the possession of a coowner of land is for the benefit of his coheirs or coowners and he cannot prescribe against them in the absence of notice to them that he is holding adversely to their interests. Alexander v. Light, 112 La. 925, 36 So. 806; Murphy v. Murphy, 136 La. 17, 66 So. 382; Liles v. Pitts, 145 La. 650, 82 So. 735; Hill v. Dees, 188 La. 708, 178 So. 250 and Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369.
 

 Notwithstanding that the tax purchase of James Rafe King invested him with legal title to the property, his possession for the account of his coheirs did not change and, under the above cited jurisprudence, he must be regarded as still holding for them in the absence of notice that his possession was adverse. This being so, the five-year peremption provided by Section 11 of Article 10 of the Constitution did not accrue during this possession as it is established that the running of the peremptive period is suspended so long as the tax debtor remains in possession of the property adjudicated either in person or through tenants or coowners.
 
 [2]
 
 Pill v. Morgan, 186 La. 329, 172 So. 409 and Thurmon v. Hogg, 225 La. 263, 72 So.2d 500.
 

 The only other defense of Mrs. Jenkins is that plaintiffs are estopped by their laches in allowing 25 years to elapse before demanding restoration of their interest in the land.
 

 
 *195
 
 We find no merit in this contention in view of the particular circumstances of the case. It appears from the uncontradicted testimony contained in the record that, after the death of Mrs. Angie King, plaintiffs permitted their uncle, James Rafe King, to remain in possession of the 50-acre tract as a homestead and he was also allowed to reap all fruits derived from the land including revenues from leases and sales of timber; he paid no rent to his other coheirs and was never asked for an accounting of the revenues he derived from the property, the testimony being that he was allowed full use of the land because he was old and had no other source of income.
 

 Under the above stated facts, the equitable principle of estoppel cannot be employed as a bar to the restoration of plaintiffs’ title. In all of the matters in which this doctrine was successfully invoked against the claim of the coheirs, it appeared not only that a long time had elapsed between the tax sale and the filing of suit but also that the property had become greatly enhanced in value and that it was mainly due to the increased value that the coheirs ,became .interested and were making their belated claim. Although 25 years has elapsed in this case, we feel it would be unjust to conclude that the time alone operates as a bar. against plaintiffs in view of ■'■the' uncontradicted evidence showing that plaintiffs were without knowledge of the tax sale (believing that their uncl'e was paying the taxes of approximately $10 falling due each year) and in view of the considerations which prompted them to allow him to remain in sole possession of the property.
 

 The judgment appealed from is therefore reversed insofar as it adversely affects Mrs. Charlene Westmoreland McDaniel and Cecil King and it is now ordered that plaintiffs’ suit be dismissed as to those defendants. In other respects, the judgment is recast so as to recognize plaintiffs as owners of an undivided one-half interest in indivisión with Mrs. Mona Mae Westmoreland Jenkins, in the following described property, to-wit:
 

 Fifty (50) acres of land, more or less, in Section 46, T. 4 S., R. 5 E., bounded North by L. H. Westmoreland and J. A. King or assigns; East by heirs of J. H. Koffman or assigns; South by Mrs. T. B. King or assigns and West by Jessie Pevey Estate; less and except 20 acres of said property sold to Mrs. Charlene Westmoreland Me-Daniel per deed of record in C.O.B. 45, page 76,. of the records of St. Helena Parish, dated June 20, 1951 and 8 acres, more or less, sold to Cecil King per deed of record in C.O.B. 45, page 89, dated July 7, 1951, of record in St. Helena Parish, Louisiana.
 

 The costs incurred by Mrs. Charlene Westmoreland McDaniel and Cecil King are to be paid by plaintiffs.
 

 [1]
 

 . It was stipulated at tlie trial that Cecil King has since sold 4 of the 8 acres he purchased to Mrs. Jenkins, the legatee of James Rafe King, hut the deed, containing a description of the acreage, was not offered in evidence.
 

 [2]
 

 . The possession of James Rafe King in his capacity as agent for his coheirs (the plaintiffs) operates in law as a constant protest to his tax title and the constitutional peremption did not commence running as long as the possession continued. Carey v. Cagney, 109 La. 77, 33 So. 89.