ELLIS, Judge.
This is concursus proceeding instituted by the plaintiff, Southern Natural Gas Company, as the owner-operator of certain mineral leases affecting land in Terrebonne Parish, particularly in Sections 52 and 53, Township 18 South, Range 19 East. The revenues allocable to the portions of these sections in dispute has been deposited in the registry of the Court and all claimants cited to assert their respective claims thereto. Southern Natural Gas Company seeks only to be relieved of any further obligation with respect to the money deposited and a determination as to the proper recipients of future revenues.
The large number of defendants in this suit can be divided into two groups, known as the “LeBoeuf Heirs” and the “Heirs and Assigns of Francois Naquin”. The Le-Boeuf Heirs claim an undivided nine-tenths interest in the land in Section 52 as the descendants of nine of the ten children of Jean LeBoeuf and his wife. The heirs and assigns of Francois Naquin claim full ownership of the land in Section 52 by virtue of 30 years adverse possession. The wife of Francois Naquin was the tenth child of Jean LeBoeuf.
The trial court rendered judgment in favor of the heirs and assigns of Francois Naquin, holding that the LeBoeuf Heirs had failed to overcome the presumption created by Article 3488 of the LSA-Civil Code, which provides that:
“As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears, that the possession began in the name of and for another.”
The LeBoeuf Heirs have appealed. The only basis for claiming the money on deposit in the registry of the court is the ownership of the land and it is to that problem that this court must address itself.
The facts in the instant case are not in dispute.
The Southeast Quarter of the Northeast Quarter of Section 52, together with other lands not here pertinent, was patented by the State of Louisiana to Hyacinth Naquin on January 18, 1860. By mesne conveyance this land was acquired by Jean LeBoeuf on February 10, 1893. The conveyance records of the Parish of Terrebonne do not indicate that this property was ever alienated subsequent to 1893, though the Heirs of Naquin contend it was intended to be included in two sales to Boquet, executed by the ten children of Jean LeBoeuf after the demise of he and his wife.
The Northwest Quarter of Section 53 was acquired by patent by Jean LeBoeuf on July 15, 1895. Jean LeBoeuf never sold this land but following his death, his ten *436 •children sold all of the land in Section 53 to Adam Boquet by deeds dated March 5 .and April 10, 19Ü6.[1] These two deeds offer■ed in evidence clearly show that the property •conveyed was located in Section 53, Township 18 South, Range 19 East and was the same property acquired by Jean LeBoeuf by patent No. 5310 dated July 15, 1895. The first of these deeds is signed by Odile Le-Boeuf, wife of lawful age of Francois C. Naquin, and Mr. Naquin joined in that deed to authorize and assist his wife.
The heirs and assigns of Francois Naquin •contend that this conveyance was intended -to include lands in Section 52. In view of the language of the descriptions contained in those two conveyances, however, the .argument is untenable. The area conveyed to Boquet as recited in the deeds is 160 acres which is the area of the Northwest Quarter •of Section 53. In addition these deeds refer to the acquisition by Jean LeBoeuf by patent #5310 from the State of Louisiana, dated July 15, 1895, which patent specifically refers to Section 53 and does not cover any portion of Section 52.
On September 11, 1906, Adam Boquet sold a portion of the land which he had acquired from the Heirs of Jean LeBoeuf to Francois Naquin, husband of Odile Le-Boeuf, by the following description:
“A certain tract of land, situated in the Parish of Terrebonne, La., on the right descending bank of Bayou Point-au-Chien, having a front of 5 arpents, more or less, on said Point-au-Chien, the upper and lower lines running to a point in the rear so as to form a triangle. Bounded above by lands of Hyacinth Naquin, together with the buildings and improvements thereon.
“Being part of the same property ac■quired by vendor from Heirs of Jean LeBoeuf by act before E. C. Wurzlow, 'Clerk. Conveyance Book 55, Folio et seq.”
Soon after acquiring title to this triangular tract of land in Section 53, about which there is no dispute in this litigation, Francois Naquin and his wife, Odile Le-Boeuf Naquin, went into actual, physical possession thereof. This possession extended beyond the western boundary of Section 53, however, and included the Southeast Quarter of the Northeast Quarter of Section 52 which was then owned by the Heirs of Jean LeBoeuf.
That this possession was actual, physical, uninterrupted, peaceful and for the period beginning in 1906 and lasting about 50 years is not disputed. Francois Naquin and his wife and children farmed part of the land in Section 52, cut wood therefrom trapped and crawfished thereon, and granted numerous mineral leases throughout the years.
All of this is admitted and we quote as follows from page 6 of the brief filed herein by the appellants, the Heirs of LeBoeuf:
“Unquestionably Francois Naquin and his family expanded their possession into the land to the West (behind the small tract purchased from Adam Boquet) and exercised dominion over the SE14 of NE(4 of Sec. 52 in which the wife with her nine brothers and sisters had joint ownership, inherited from their parents, Jean LeBoeuf and wife. Without any title thereto, Francois Naquin cultivated some part of the land in the rear and the whole family crawfished thereon just as the witnesses testified.”
Quoting further from appellant’s brief at page 8 we find the following language, which serves to narrow the issues herein involved to those of law only:
“Moreover, if the wife of Francis G. Naquin had not herself been a child of LeBoeuf and his wife, and therefore a co-owner with her nine sisters and brothers, we would not question Na-quin’s 30 year prescriptive title to the *437 land still of record in the name of Jean LeBoeuf.
“Plainly had Naquin and wife been strangers to the remaining LeBoeuf children, they would have had the right to acquire title by 30 years adverse pos•session and had the LeBoeuf children not accepted their parents’ successions they would have lost the right to do so.”
That the only serious claim to the owner-ship of lands in Section 52 made by the heirs and assigns of Francois Naquin is ‘based on the plea of 30 years acquisitive .and liberative prescription is further evidenced by the fact that on June 13, 1952 .all of tlie direct descendents of Francois G. Naquin and his wife, Odila LeBoeuf Naquin, both deceased, entered into an act •of partition purporting to divide:
“A certain tract of land situated in the Parish of Terrebonne * * * located in Sections 52 and 53, Township 18 South, Range 19 East. * *
The act of partition contains the following declaration:
“Appearers represent that they and their authors in title have been occupying the above described property openly, publicly, continuously, and undisturbed for a period of over fifty years; that the front portion of said property was acquired under date of September 11, 1906 from Adam Boquet, by act which is on file in the Clerk’s Office and recorded in C.B. 55, folio 620; that Francois G. Naquin acquired the remainder of said property under date of January 12, 1889, from Louis Rod-rigue and Gustave Bourg, by act. * * Appearers are given to understand that ■said property was transferred to Jean LeBoeuf under date of February 10, 1893, by act of record in * * *; that they were always of the impression that said property was the property of Francois G. Naquin, and that same has been possessed by all of the appearers and their authoris in title as being the property of Francois G. Naquin, and that it was considered in the community as the property of said Francois G. Naquin, said possession being open, public, continuous, and undisturbed for a period of over fifty years.”
Freely admitting that the heirs and assigns of Francois Naquin have been in actual possession of the land in Section 52 for a period of approximately fifty years, the heirs of LeBoeuf, nevertheless, assert ownership to an undivided nine-tenths thereof, contending that owners in in-división cannot acquire title by prescription against each other in the absence of notice by one co-owner to the other (s) that he holds all of the property adverse to the owner(s).
The Heirs of Naquin rely principally on the cases of Lee v. Jones, 224 La. 231, 69 So.2d 26 and British American Oil Company v. Griggaffi, La.App., 135 So.2d 559, 561.
In the case of Lee v. Jones, supra, land had been acquired as community property in 1857. The husband died in 1863 and was survived by his widow, one major child (Calvin) and one minor child (Sallie). In 1880 Sallie married and neither she or her descendants exercised any acts of possession over the land since that year. Calvin continued to live on the property, even after the death of his mother in 1899. About seventy years after Sallie departed, her heirs and assigns were cited in a concursus proceeding to assert their claims of ownership to the land. The court found that, being a minor at the time her father died, the law accepted his succession for Sallie with benefit of inventory and that the possession by her brother, Calvin, for more than thirty years did not serve to vest the interest she inherited from her father in Calvin by thirty years acquisitive prescription. However, having been a major at the time her mother died, and having made no acceptance, either formal or tacit, of her mother’s succession, Sallie could not do so after the passage of thirty years and thus, *438 Calvin acquired her interest in the succession of her mother by thirty years acquisitive prescription.
The British American case, supra, involved the acquisition in 1886 of land by Robinson and Austin. Stating at page 562 of 135 So.2d, that:
“The principal legal point at issue herein is whether one co-owner may acquire by prescriptive title the interest of a co-owner in and to property held in common.”
held that the evidence did not establish an intent to possess adversely to the co-owner, nor adequate notice to the co-owner of such intent. The evidence relied on in the British American case to establish the requisite notice and intent was the possession and use of the land over a long period of time, payment of taxes, filing of homestead exemptions and institution of a partition suit which was never prosecuted to judgment. We believe that the following language of the court at page 564 of 135 So.2d clearly sets forth the law on this subject:
“As correctly pointed out by learned counsel for the Austins and conceded by counsel for the Robinsons, it is the well settled jurisprudence of this state that owners in indivisión cannot acquire by prescription the right of their co-owners in and to property held in common. Litton v. Litton, 36 La.Ann. 348; Simon v. Richard, 42 La.Ann. 842, 8 So. 629; Dew v. Hammett, 150 La. 1094, 91 So. 523; Hill v. Dees, 188 La. 708, 178 So. 250; Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369; Atlantic Refining Co. v. Golson, La.App., 127 So.2d 341.
“It is likewise admitted by all concerned that an exception to the foregoing rule is recognized in those instances wherein the adversely possessing co-owner gives notice to his owner or owners in common that he intends to possess contrary to the common interest. Under such circumstances one owner in common may prescribe against a party owning in indivisión with him provided such possession be clearly hostile and notice be given thereof. Ethredge v. Watts, 137 La. 686, 69 So. 95; Liles v. Pitts, 145 La. 650, 82 So. 735; Gill v. Robinson, 11 Orleans App. 226 and Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369.
“In assessing factual circumstances to determine whether a particular case falls within the exception rather than the general rule it has been held that mere occupancy use, payment of taxes and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. Lee v. Jones, 224 La. 231, 69 So.2d 26; Alba v. Smith, 228 La. 207, 81 So.2d 863; Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481, Banks v. Yarborough, La.App., 104 So.2d 283.
“Registry of a new title does not ipso facto constitute notice of a co-owner that the possession of his owner in common has become adverse. John T. Moore P. Co. v. Morgan’s Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22.”
The case at bar is much like the case of Lee v. Jones. Following that case, if the Heirs of LeBoeuf are to prevail, they must establish that the ten children of Jean LeBoeuf and his wife accepted the successions of their parents within the thirty year period allowed by law. Having shown this, the burden of proof would rest upon the heirs and assigns of Francois Naquin to establish that the possession of Francois Naquin began, or later became,- adverse to the co-heirs of his wife so as to permit him to acquire title to the property by thirty years acquisitive prescription.
That all ten children of Jean LeBoeuf and his wife accepted the successions of their parents cannot be seriously disputed, and it cannot be disputed by the heirs of Francois Naquin who claim land in Section 53 under deeds executed by the ten *439 children as heirs of their deceased parents. The execution of these deeds to lands in Section 53 and the execution of various mineral leases, constitute a tacit acceptance of the successions under article 988 of the LSA-Civil Code.
 Having thus accepted the successions of their parents, none of the ten children of Jean LeBoeuf could acquire a prescriptive title against any of the others without first giving unequivocal notice to the others that his or her future possession would not be for the benefit of all heirs, but would be adverse to all. Therefore, Odile LeBoeuf Naquin, wife of Francois Naquin, could not by mere possession acquire any prescriptive title against her sisters and brothers. But could Francois Naquin? We think not.
Counsel for the LeBoeuf Heirs refer this court to Planiol’s Civil Law Treatise, Vol. 1, part 2, Sec. 2313 which provides that:
"The following are detainers or precarious possessors
‡ 5*4 5}C ij; :js
“8. The administrators of the property of third persons (mandatories, tutors, husbands, etc.) who have the custody of the things and its management.”
Article 3523 of the LSA-Civil Code provides that husbands and wives cannot prescribe against each other, therefore Francois Naquin could never have acquired any prescriptive title adverse to his wife, nor as has already been pointed out, could she against her brothers and sisters. Applying the explanation of the law as expressed by Planoil, which we believe in this instance to be entirely sound, Francois Naquin was a precarious possessor for his wife and therefore could not acquire a prescriptive title adverse to the other nine children of Jean LeBoeuf absent unequivocal notice to each of them of his intent to possess as owner.
It becomes necessary, therefore, to examine the evidence to determine whether there was notice of intent to possess adversely.
That Francois Naquin and his family exercised peaceful possession of the land in Section 52 for fifty years is not disputed. However, this is the right of a co-owner. The law is clear that all co-owners have the right to use and occupy the premises held in indivisión. British American Oil Producing Co. v. Grizzaffi, supra.
Payment of taxes, signing of homestead exemptions and the like are likewise legally insufficient to constitute notice. Lee v. Jones, supra.
In 1937 Francois Naquin began granting mineral leases on lands in Section 52. Assuming without deciding that this constitutes notice to the other heirs of an intent to possess adversely, the requisite thirty years will not accrue so as the vest title in Francois Naquin, his heirs or assigns until 1967, and not then because of this litigation. The only remaining evidence of notice of adverse possession is the fact that the property was referred to as the property of “Uncle Guaya” (a nickname for Francois Naquin), and was considered his by the community. Even some of the Le-Boeuf Heirs referred to the property in this fashion.
This does not, however, constitute notice to co-owners of an intent to possess adversely. It can more easily be viewed as a convenient name for the land, a method of referring to the area. In addition, since “Uncle Guaya” did own the adjacent tract in Section 53 it was only natural for the public to assume that he owned the land adjacent in Section 52 which he also possessed.
The evidence is legally insufficient to justify a finding that Francois Naquin possessed the land in Section 52 adverse to the co-heirs of his wife.
The heirs and assigns of Francois Naquin have relied in part on Watson v. Crown *440 Zellerbach Corporation, 240 La. 500, 124 So.2d 138, as authority for the proposition that a vendor may prescribe against a ven-dee and thus acquire title to real estate by thirty years acquisitive prescription. This, of course, is true but that case is inapplicable to the facts before this court for the reason that there was no question of co-ownership in the Watson case, whereas, in the instant case the heirs of LeBoeuf are claiming to be co-heirs with the heirs and assigns of Francois Naquin, who actually possessed the land in disputf
Also relied on by the Heirs and Assigns of Francois Naquin is the case of Ethredge v. Watts, 137 La. 686, 69 So. 95. That case is inapplicable to the facts of the case at bar for in the Ethredge case the court found that as ownership dates from the conclusion and not the inception of the thirty years, the plaintiffs (out of possession) and the defendants (in possession) never were co-owners. Thus, when, 15 years after possession commenced, the real owner of the property donated it to the defendants, this donation was not received by a co-owner for the benefit of all co-owners, but be an adverse possession with only half the required time to acquire a prescriptive title.
The last case relied on by Heirs of Francois Naquin which we need consider is Succession of Seals, 243 La. 1056, 150 So.2d 13. We believe the following language of Justice McCaleb, (150 So.2d pp. 22-23) in his concurring opinion adequately distinguishes the Seals case from the case at bar and supports the conclusions we have reached:
“A distinction should be recognized, I think, between a case like this, in which a co-owner pleading 30-year acquisitive prescription takes initial possession under a deed translative of the property, albeit invalid, and a case in which a co-owner enters possession of the whole without a paper title and without clearly indicating to the other co-owners that he intends his possession to be hostile to their interests. In the first instance, it strikes me that the very fact that he acquires a title for valuable-consideration, as in this case, is sufficient to rebut any legal presumption that he is possessing for his co-heirs or co-owners, which normally obtains in cases, in which the co-owner simply takes-possession of the land. Accordingly, in this case, the fact that Stokes Seals, entered the property in 1913 under a title and possessed as owner for over 30' years is sufficient, in my opinion, to warrant maintenance of the plea of 30-year acquisitive prescription and this-despite the fact, as indicated by the evidence, that he may have permitted' some of his co-heirs to live thereon by sufferance.”
No useful purpose would be served by including in this opinion the names of the many heirs claiming to be owners on each side of this litigation, or to attempt to fix the proportion due each. Insofar as any dispute exists as between the litigants as to the proportions due each, the case is remanded.
In conformity with the opinions of this court, the LeBoeuf Heirs and those tracing rights through them are decreed to be the owners in indivisión of an undivided nine-tenth interest in the Southeast Quarter of Northeast Quarter of Section 52 Township 18 South, Range 19 East, and the heirs of Francois Naquin are decreed to be the owners in indivisión of an undivided one-tenth interest in the Southeast Quarter of Northeast Quarter of Section 52 Township 18 South, Range 19.
The heirs of Francois Naquin are decreed to be the owners of all the property acquired by Francois Naquin in Section 53 Township 18 South, Range 19 E.
Article 4659 of the LSA-Code of Civil Procedure allows the court in a con-cursus proceeding to assess tire costs of court against any party who contested the right of the successful litigant “as in its judgment may be considered equitable.” In the instant case we believe that it would be *441 ■equitable to assess the costs against all litigants. Accordingly, the clerk of the Seventeenth Judicial District Court, Parish of Terrebonne, is authorized to pay to Southern Natural Gas Company all sums advanced by that party for the clerk’s convenience, and to distribute the remainder of the funds in conformity with the opinions herein expressed.
Reversed and remanded.

. The first deed conveyed the interest of seven of the ten heirs and the second deed, the interest of the other three heirs.