BAILES, Judge.
This is an appeal from the judgment of the district court denying the plaintiffs-appellants a declaratory judgment recognizing them to be the owners of certain property in Assumption Parish, and also denying their plea, alternatively, for an ordinary judgment recognizing them to be the owners of such property. For the reasons which are set forth below, the judgment appealed from is affirmed.
The plaintiffs, 126 in number, brought this action against the heirs of W. H. Lawes and their mineral lessee, Union Producing Company, seeking a declaratory judgment recognizing the plaintiffs to be the owners of the North Half of the Southeast Quarter, Section 36, Township 13 South, Range 12 East, and all of Fractional Section 31, Township 13 South, Range 13 East, less and except the upper eight arpents and the lower fourteen arpents of said fractional section, all in Assumption Parish, Louisiana, and alternatively, they pray for an ordinary judgment recognizing them to be the owners of said property.
Defendant-appellee, Union Producing Company, lessee of the other defendants-appellees, by virtue of a release of all its rights under the mineral lease it acquired from the other defendants, has filed a motion in which it asked to be dismissed from this suit. No objection was raised to this motion by the plaintiffs. Therefore, the motion is granted, and accordingly, Union Producing Company is dismissed from this action.
All parties hereto acknowledge that their claims of title originate from one Bertrand Saux (the name sometimes in the documents in evidence in the record being spelled Saus, Sauce or Sause), who was the patentee of Fractional Section 31, and who acquired the North Half of the Southeast Quarter of Section 36 by a partition with Marcelin Rodry (or Rodrigue), with whom he had previously owned the entire Southeast Quarter (SE }4) of Section 36 in indivisión.
By successive conveyances made in 1853, Bertrand Saux conveyed the lower 14 ar-pents of Fractional Section 31 to Joseph Fleury and Jean Bubser, the upper six arpents of this fractional section to Augus-tin Bertelotte, and the lower two arpents of the upper eight arpents of the fractional section to Marcelin Rodri, thus leaving, in the name of Bertrand Saux, a tract of land containing approximately 20 acres, comprised of the lower six arpents of the upper 14 arpents of Fractional Section 31, which, together with the North Half of the Southeast Quarter of said Section 36, of the said townships and ranges, makes up the property in dispute herein.
After trial on the merits in the district court, the judge a quo found that the plaintiffs had failed to sustain the burden of proving the required heirship, and dismissed their suit, with prejudice.
There is no doubt, in view of the evidence before us in this record, that some of the plaintiffs herein have sustained the burden of proving heirship. We believe it will best serve the purpose of this decision to assume, arguendo, that plaintiffs have established heirship to the common ancestor, Bertrand Saux. The resolution of the other issues raised by the plaintiffs are determinative of this action and will show that the defendants must prevail.
The record before us shows that some time prior to 1888, Bertrand Saux died. In the year 1888, the subject property was sold to the State of Louisiana for nonpayment of taxes due for the year 1887. In 1891, the State of Louisiana transferred the property to the Atchafalaya Basin Levee District, and in 1899, the Atchafalaya Basin Levee District conveyed the property to Desire Sauce. In 1918, W. H. Lawes acquired an undivided one-half interest in the subject property from the widow and heirs of Desire Sauce. In 1921, the remaining one-half interest in the property, *726 which was assessed to the Estate of Desire Sauce, was sold to W. H. Lawes at a tax sale for the non-payment of 1920 taxes.
As is shown by the reported case of Gonzales v. Saux (1907) 119 La. 657, 44 So. 332, certain children of Bertrand Saux instituted suit against Desire Saux (Sauce), the purpose of which was to effect a partition by licitation and to establish the validity of the title to the subject property. Contrary to the allegation of the plaintiffs in their original petition in this action that the tax sale from the Estate of Bertrand Saux to the State of Louisiana in 1888 was nullified by judgment of the court in Gonzales v. Saux, supra, the fact is that the Supreme Court of this State put at rest any question of the validity of the said tax sale of the subject property to the State of Louisiana in 1888. The Supreme Court therein held that the heirs of Bertrand Saux had the right to redeem the subject property within twelve months from the date the tax deed shall have been recorded in the records of Assumption Parish (the tax deed had not theretofore been recorded in the public records). Subsequent to the finality of the judgment rendered in Gonzales v. Saux, supra, it appears that the heirs of Bertrand Saux made an effort to effect a redemption of the property. This so-called act of redemption will be discussed infra.
It should be mentioned that Desire Sauce, in addition to having acquired title to the subject property from the Atchafalaya Basin Levee District in 1899, acquired an undivided one-fourth interest in subject property in 1898 from Antoine Saux, a son of Bertrand Saux.
In view of the transfers affecting the subject property from 1888 down to and including the tax deed by which W. IT. Lawes acquired the one-half interest of the Estate of Desire Sauce in the property, the claim of the heirs and descendants of Bertrand Saux, as such, to the said property must stand or fall, be sustained or rejected, on the validity of the procedure of redemption of the property reserved to> them by the Supreme Court of this State-in the case of Gonzales v. Saux, supra. Further, the claim of the heirs of Desire Sauce to the subject property must stand" or fall on the sufficiency or insufficiency-of the tax deed by which W. IT. Lawes-acquired the above mentioned one-half interest, or the resolution of the question of adverse possession of the property by the defendants as opposed to that of certain of the heirs of Desire Sauce.
The defendants-appellees defend their claim to title to the property by pleading the valid acquisition of the property by Desire Sauce from the Atchafalaya Basin-Levee District, the purchase of an undivided' interest in said property from the widow and heirs of Desire Sauce, the acquisition-of the other or remaining one-half interest at the tax sale in 1921 for non-payment of the taxes for the year 1920 by the Estate of Desire Sauce, exceptions of prescription of ten and thirty years. In pleading the-validity of the 1921 tax sale, defendants-contend that the five year peremption under Article 10, Section 11 of the Constitution of 1921 is applicable; and they further plead that the plaintiffs are estopped by laches and the presumption of omnia rite.
On the other hand, plaintiffs-appellants-argue that the five year peremption, above cited, is inapplicable for the reason that the description of the property in the tax salé-is too vague to support the validity thereof, and further argue payment of the taxes-by Lawes, the co-owner is equivalent to-payment for the tax debtor, the other co-owner.
We will now proceed to a consideration of the respective positions of the parties. First, we will consider the purported redemption of the property by the heirs of Bertrand Saux in 1910 prompted by the decision of the Supreme Court in the case of Gonzales v. Saux, supra.
In support of their contention, the plaintiffs-appellants introduced in evidence a document which purports to be a recita *727 tion of what transpired in their attempt to obtain a redemption deed to the property from the treasurer of the State of Louisiana on June 20, 1908. This document is, in fact, nothing more than a proces verbal by the notary public of what he did in his effort to obtain the redemption deed. He recites that he tendered, for and on behalf of the "owners” the sum of $5.90, as the full amount of taxes, interest and costs, plus the sum of $2.00 to cover the amount of twenty (20) per cent as penalties, under Act 98 ■of 1896, all of which was refused, and that .a like tender of the same amount was made to the auditor of the State of Louisiana, which was likewise refused; that then this •amount of $7.90 was deposited in the Bank ■of Baton Rouge, a banking institution in the city of Baton Rouge, to the credit of the Treasurer of the State of Louisiana. 'This purported redemption was made twenty years after the sale of the property to the State of Louisiana for non-payment •of taxes. From the above facts, it is plain to see that there was no tender of taxes due on the property between 1887 and 1908.
Under the ruling of the court in St. Bernard Syndicate v. Grace (1930) 169 La. 666, 125 So. 848, which was a mandamus .action brought against the State Treasurer to compel the redemption of property adjudicated to the State, it was held that the tender of only the taxes, penalties and •costs for the year for which the property was adjudicated, plus the tax for the following year of assessment in the name of the tax debtor, was an improper tender inasmuch as the tax debtor did not tender an .amount representing the taxes for all the years intervening between the tax sale and the date of the exercise of the right to redemption, together with interest, penalties •and costs. In discussing prior tax legislation, including Act 82 of 1884 and the Constitution of 1879, the court stated:
“[1] * * * There is not a statute which we have been able to find which provided for the sale by the state of property which had been forfeited or adjudicated to the state for taxes, or 'which provided for the redemption of such property from the state, that does not make provision for the inclusion in the price of the sale, or of the redemption, of all taxes due subsequent to the adjudication to the state.” (Emphasis added)
Also see Martinez v. State Tax Collectors (1890) 42 La.Ann. 677, 680, 7 So. 796.
Based on the facts surrounding the so-called redemption of the property by the heirs of Bertrand Saux from the State of Louisiana, the law and the jurisprudence applicable thereto and interpretative thereof, we find the property was not redeemed in accordance with the decree of the court in Gonzales v. Saux, supra.
Considering now the defendants’ plea of peremption under the provisions of the Constitution of 1921, Article 10, Section 11, which provides that:
«* ^ *
“No sale of property for taxes shall be set aside for any cause, * * *, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall hot be served until the time of redemption shall have expired and within five years from the date of recordation of the tax deed, if no notice is given. * *
This peremption of five years is a bar to any action by the plaintiffs to set aside this tax sale from the Estate of Desire Sauce to W. H. Lawes unless the description of the property sold is so vague, indefinite and uncertain that the property intended to be sold cannot be identified.
The description of the property of which we are concerned is as follows: “50 acres by Berthelotte and Cary the same have been assessed to Est. Desire Sauce as the owner thereof, as showned by the tableaux of assessments for the year 1920.”
The law governing the interpretation of the description in such situations is found succinctly set forth in the case of Tillery *728 v. Fuller (1938) 190 La. 586, 182 So. 683, at page 704, wherein the late Chief Justice O’Neill, as the organ of the court, stated:
“[21-24] * * * A tax sale made under an assessment in which the description of the property intended to be assessed is so defective that resort must be had to evidence outside of the assessment roll in order to identify the property intended to be assessed is protected by the limitation of three years if the assessment was made in the name of the true owner, or owner of record, of the property intended to be assessed, and if the identity of the property intended to be assessed is established unmistakably by such outside evidence. (citations omitted) In such cases the identification of the property intended to be assessed may be confirmed by proof that the party in whose name the property was assessed did not own any other property in the section or other subdivision given in the assessment. * *
The evidence shows that Desire Sauce acquired the property from Atchafalaya Basin Levee District in 1899 by the identical description used as the basis for the transfer of the property) for non-payment of taxes, to the State of Louisiana which comprised all of the property owned by the Estate of Bertrand Saux on the date of the tax adjudication. Using the same description for that purpose, the property was assessed to Desire Sauce in 1900. There is proof in the record to establish the fact that Joseph Fleury and Cleophas Berthelotte were abounding owners of a part of the 100 acres of land owned by the Estate of Bertrand Saux and subsequently by the Estate of Desire Sauce. Extracts from the assessment rolls from 1901 to 1919 clearly reflect the corruption of the name of Joseph or Jos. Fleury to Jos. Kerry to J. Kerry to Jos. Carey to Joe Terry to Cary; and the name Cleophas Berthelotte to Jos. Berthelotte to C. Berthelotte to Cleo Berthe-lotte to Cleophus Berthelotte to C. Chedotal Berthelotte, thus reflecting, at the time of the sale to W. H. Lawes, the names Berthelotte and Cary. This variation in names is clearly attributable to differences in handwriting as the rolls in those years were written by hand. This evidence, coupled with the fact that the assessor for the year 1919 parenthetically added to the name of the owner, Est. of Desire Sauce, the words, as follows: (& W. H. Lawes). The surveyor testified that he experienced no difficulty in establishing that Fleury was the abounding owner of a tract of land in the southern half of Fractional Section 31 and that Cleophas Berthelotte was an abounding owner on the north side of Fractional Section 31.
Also Defendants-Appellees plead the presumption “omnia rite.” We find this presumption has application to this tax sale, as it has been applied in other similar cases by our Supreme Court.
In Egle v. Constantin et al. (1941) 198 La. 899, 5 So.2d 281, which was also a petitory action in which a tax sale of immovable property was questioned on the ground of insufficient description. The description under which the property was sold was the following: “A certain tract of land measuring Nine Hundred and Forty Acres and being No. 114 as appears by assessment roll of 1876; said land situated on the left bank of Bayou Lafourche at about Seventy miles below the Town of Thibodaux, bounded by the lands of Thibo-daux and the State of Louisiana.” Therein the court stated:
“[11] Plaintiffs allege that defendants are in actual and physical possession of the lands claimed by them. Defendants aver that they acquired the lands by mesne conveyances from Maximillien Bernard, the purchaser at the tax sale on December 6, 1877, and that they and their ancestors in title have been in undisturbed possession of the lands since shortly after that date. Therefore, as between the parties there is no uncertainty as to the location and description of the property involved in this suit. (Emphasis added)
*729 “[12] The plaintiffs and their ancestors in title have stood by for years, silent and inactive, while Maxmillien Bernard and his successors in title were in possession of all these lands under a tax title and mesne conveyance and have permitted them to exercise all the rights of ownership in the land. In Harrell v. Harrell, 174 La. 957, 142 So. 138, 140, this Court, citing a number of authorities, said: 'It is well settled that: “The presumption ‘omnia rite’ applies to tax sales after parties have slept on their rights for many years.” ’
“In that case this Court also quoted approvingly from Griffing v. Taft, 151 La. 442, 91 So. 832, as follows: ‘Moreover, it is immaterial (for the purposes of prescription under article 233 of the Constitution of 1898) whether the assessment has been made in the name of one person, or another, or in no name, or whether the owner, not in possession, has been notified, or whether the sale has been advertised or has not been advertised.’ ”
Also in Ewald, et al. v. Hodges, et al., (1960) 239 La. 883, 120 So.2d 465, the Supreme Court said:
“[11] ‘Another factor that fortifies the tax sale is the inaction of the plaintiffs and their ancestors from asserting any rights to this property over the period of many years. Although the failure to exercise any acts of ownership of property over a long period of time does not necessarily forfeit title to the property, it does serve to fortify an adversary’s title, particularly a tax title.’ ”
Considering all of the evidence in the record which unquestionably establishes the identity of the subject property, and especially in view of the fact that the parties concerned at the time of the tax sale knew the location and description of the property, and in the absence of any showing that Desire Sauce owned any other property In the parish, and applying the guide lines fixed by the jurisprudence above cited, we have no hesitancy whatever in finding that the five year peremption period is applicable and controlling and puts at rest the validity of the tax sale by which W. H. Lawes acquired title to the remaining one-half interest in this property.
Plaintiffs argue that the 1921 tax sale to Lawes had the effect of a payment of the unpaid taxes due by the Estate of Desire Sauce because W. H. Lawes owned an undivided one-half interest in the property. Plaintiffs rely on and cite the cases of Hodgeson v. McDaniel (1957) 233 La. 180, 96 So.2d 481, and British American Oil Producing Co. v. Grizzaffi (1962) La.App., 135 So.2d 559.
In Hodgeson v. McDaniel, supra, there is no comfort for the plaintiffs. Therein, in 96 So.2d at page 483, we find the following:
“[2,3] It is the established jurisprudence that property sold to one coowner or coheir for delinquent taxes is regarded, as far as his coowners are concerned, as merely a payment of the taxes for all and any one or more of them may be reinvested with title by making claim on the tax purchasing coowner within a reasonable time and paying his proportionate share of the adjudication and subsequent installments, (cited cases omitted) However it is important to note, as a careful examination of the above cited cases will reveal, that a coowner who purchases at a tax sale acquires the legal title to the adjudicated property and that the right of his coowner to be reinvested with legal title is not a statutory or constitutional right but, rather, rests exclusively upon equitable considerations (cited cases omitted) * * *. Principles of equity are thus invoked to protect such coowners by not permitting the tax purchasing co-owner to profit at their expense provided, of course, that they act with diligence.
“[4] The jurisprudence on the subject discloses that there are two situations in which a coowner may lose his equitable *730 right to have his legal title restored by-paying to the tax purchasing coowner his proportionate share of the adjudicated price together with all taxes which have subsequently become due. Those instances are (1), when the coowner has not come forward to regain his rights within a time considered reasonable under all circumstances presented in the particular case, he is held to be estopped by his laches from asserting his claim and (2), whenever the rights of third parties have intervened. (Emphasis added)
In British American Oil Producing Company v. Grizzaffi, supra, this court reiterated the principle of law set forth in the above quotation from Hodgeson v. McDaniel, supra, that a tax debtor loses his right of re-acquisition of his interest in property purchased by a co-owner at a tax sale where he waits an unreasonable length of time before offering or attempting to redeem his property. Neither of the cited cases support plaintiffs’ contention.
As noted above by the court in Hodgeson v. McDaniel, the right of reacquisition or redemption is not granted to tax debtor either by statute or the Constitution, but is founded in equity. In this case, whatever right the heirs of Desire Sauce had to redeem or re-acquire the interest in the property bought by W. H. Lawes at the tax sale has been now forever lost by laches and the elapse of more than forty years. See Doiron v. Lock, Moore & Co. (1927) 165 La. 57, 115 So. 366; and Lafitte Dufilho & Co. v. Godchaux (1883) 35 La.Ann. 1161.
 As to the exception of prescription, the only prescriptive period we find that need be discussed is that of thirty years. The evidence shows that Mrs. Desire Sauce did, in fact, occupy a portion of the high ground of the property located in Fractional Section 31 subsequent to the 1921 tax sale, and that Antoine Saux occupied an old residence located in the North Half of Southeast Quarter of Section 36 until about the middle of the 1920s-However, it appears that certainly Mrs. Desire Sauce did not return to the property, or exercise any act of ownership whatever over the property subsequent to the date the house was destroyed in 1927. There-was testimony that Mr. and Mrs. Price, son-in-law and daughter, respectively of" Mrs. Sauce, made occasional trips back to the property for a short period of time; however, no act of ownership or possession-was demonstrated by these visits. On the other hand, there is positive proof of acts, of ownership and possession on the part of the defendants. Aside from the continuous-payment of taxes on the property, during the period from early 1920s to as late as 1959, on several occasions defendants sold timber from the property and authorized the digging of a canal and rented a house on the property to a tenant. These acts, of ownership and possession were proved by the testimony of several witnesses. Defendants, and their ancestor, W. H. Lawes, have granted oil, gas and mineral leases on the subject pi'operty between 1925- and 1960. Considered as a whole, the evidence clearly and unquestionably demonstrates that defendants and their ancestor,. W. H. Lawes, have exercised open and" exclusive possession and control as owners-of the property continuously and uninterruptedly since 1928. Possession of a part is equal to possession of the whole property. See LSA-C.C. Article 3437. There is-ample evidence before us to sustain the exception of thirty years prescription to any claim of any of the party-plaintiffs.
Accordingly, for the foregoing reasons,, the judgment appealed from is affirmed,, at appellants’ cost.
Affirmed.
WRITTEN REASONS FOR REFUSING REHEARING
Counsel has called to our attention that we did not, in our opinion, specifically dispose of the question of a 12 arpent tract of land transferred under a *731 vague description by Desire Sauce to Antoine Sauce on June S, 1909. There was never any reconveyance of this property by Antoine Sauce or his heirs, and apparently it remained in Antoine’s possession until 1927. However, one year after that, 1928, the house thereon was leased by Lawes to a third party, and since that time, Lawes has exercised the same possession over that tract, the specific boundaries of which have never been fixed, as over the remainder of the tract. This being a suit for a declaratory judgment, under the provisions of Article 3654 of the Code of Civil Procedure, we are required to render judgment in favor of the party who would be entitled to the possession of the property in a pos-sessory action, unless the adverse party makes out his title thereto. Assuming ar-guendo, that the heirs of Antoine Sauce had done so, we are of the opinion that Lawes has a valid prescriptive title thereto. Rehearing denied.