124 So.2d 138

Samuel L. WATSON et al.

v.

CROWN ZELLERBACH CORPORATION.

No. 44652.

Nov. 7, 1960.

Mentz & Ford, Hammond, for applicant.

Mary Purser, Ellis H. Bostick, Jr., Amite, for plaintiffs-appellees.

HAMITER, Justice.

The instant proceeding began as an injunction suit in which plaintiffs (Samuel L. Watson, W. Iverson Watson and W. Bryan Watson, who are brothers and also are children and heirs of Mrs. Irene Young Watson, deceased) sought to prevent the defendant (Crown Zellerbach Corporation) from trespassing on and removing timber from a small tract of land located in Livingston Parish that allegedly belonged to them. In its answer to the original petition the defendant, relying on a record title derived from one William P. Young (brother of Mrs. Irene Young Watson) and also on the acquisitive prescription of ten years, asserted ownership of such property. Thereupon, the plaintiffs, in a supplemental petition, specially pleaded the prescription of thirty years acquirendi causa under Articles 3499 to 3505, inclusive, of the Revised Civil Code.

The district court rendered a judgment in favor of plaintiffs, maintaining their prescriptive plea of thirty years, and it was affirmed by the Court of Appeal. See 110 So.2d 862, 868.

The cause is before us on a writ of certiorari or review.

The record discloses that in 1883 plaintiffs' mother (Mrs. Irene Young Watson) acquired, by donation from her parents (Laurance and Nancy Story Young), a 100 acre tract of land situated partly in St. Helena and partly in Livingston Parishes.

The land thus donated was described as being bounded on the east by the Tickfaw River and lying between parallel lines running west from such river. Subsequently, a survey of the property was made by a Mr. Womack which established and marked its boundaries.

On March 8, 1902, following the death of her father, Mrs. Watson joined with her mother and her sisters and brothers in conveying to William P. Young (defendant's ancestor in title) 133.75 acres of land lying mainly to the south of Mrs. Watson's tract, the conveyance instrument reciting that it was executed in consideration of a donation of such property previously made by the deceased Laurance Young to William P. Young (but not formally confected prior to the former's death), and, further, that the description contained therein was in accordance with a survey on January 7, 1902 of George P. Schmidt.

Plaintiffs admit that (according to the plat of the Schmidt survey) the property described in the conveyance instrument to William P. Young included a 14 acre triangular piece of Mrs. Watson's originally acquired land, the base of the triangle running along her south boundary as established by the Womack survey and its apex lying in the southern part of her tract. And it is this 14 acres, undeniably covered by the donation to Mrs. Watson in 1883, that is in dispute in this litigation.

Primarily to be determined, therefore, is the correct southern boundary of the property of plaintiffs (heirs of Mrs. Watson). Is it the line as established by the Womack survey? Or does it follow the two legs of the triangle which extend north of the Womack line and into Mrs. Watson's original tract?

Conceding that in 1902 their mother did include the disputed area in the conveyance to William P. Young (albeit unintentionally), plaintiffs insist that nevertheless she continuously thereafter, as well as they following her death in 1947, maintained open, notorious, corporeal possession of the property as owner; and that, consequently, their mother (from whom plaintiffs inherited) acquired title thereto by the prescription of thirty years. The defendant, on the other hand, denies the sufficiency of such possession.

With reference to its findings of fact on the question of possession the Court of Appeal observed: "In the case at bar the facts reveal that the retention of possession by appellee's mother was so pronounced that the people in the community or neighborhood, as well as the contiguous owners, knew that she regarded and claimed the property in dispute as owner * * *. The record conclusively shows that from 1883 until the date of her death in 1947, Mrs. Irene Young Watson, mother of appellees, with the aid and assistance of two of her sons, exercised close supervision and pos-

session over the disputed property. * * * The Watsons kept a close watch and no trespasser escaped for any length of time, * * *. Mrs. Irene Young Watson retained open and unequivocal possession of that part of the property which is now in dispute and up to the visible boundary made by Womack, the surveyor, in 1891, and which was still visible. Mrs. Irene Young Watson, and her heirs, appellees herein, have done more than just depend on the visible boundary line by constantly and at frequent intervals guarding the property against trespass and notifying contiguous owners at every opportunity that they claim all property to the Womack line. * * * "

In addition to the aforementioned circumstances mentioned by the Court of Appeal the record specifically shows that between 1941 and 1943 Newton Starns (one of defendant's ancestors in title) commenced to erect a fence north of the Womach line, but before the fence's completion he moved it to the boundary claimed by the Watsons because of their protests. Again, purchasers of timber from defendant's ancestors in title were never permitted by the Watsons to cut north of the Womack line; rather, in fact, Mrs. Watson made several sales of timber from the entire disputed tract prior to her death.

Therefore, we conclude, as did the Court of Appeal, that continuously for more than 30 years from and after 1902 Mrs. Watson

maintained open, notorious, corporeal possession as owner of the property in question.

But the defendant urges that, despite the possession enjoyed by Mrs. Watson, these plaintiffs (her heirs) cannot rely on the 30 years' prescription for the reason that the disputed tract was not enclosed by suitable boundary markings, it invoking the provisions of Article 826 of the Revised Civil Code which read: "By boundary is understood, in general, every separation, natural or artificial, which marks the confines or line of division of two contiguous estates. Trees or hedges may be planted, ditches may be dug, walls or inclosures may be erected, to serve as boundaries.

"But we most usually understand by boundaries, stones or pieces of wood inserted in the earth on the confines of two estates."

In Hill v. Richey et al., 221 La. 402, 59 So.2d 434, 439 we discussed at length the question of whether there need be "enclosures" when the property has been actually possessed for a period of 30 years and, during the course of the discussion, said: "In the articles of our Code dealing with this prescription of 30 years, Articles 3499 through 3505, both inclusive, there is nothing which limits it to land possessed by *enclosures* for a period of 30 years. The only restriction is that announced in Article 3503 that ' * * * in the prescription of thirty years, which is acquired without title, it extends only to that which has been *actually possessed* by the person pleading it'."

Also, in the Hill case we considered many decisions of this court dealing with the matter of "enclosures" and observed: "What the court means by 'enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means 'enclosed only by a fence or wall' would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases."

In the instant case the limits of Mrs. Watson's possession for more than 30 years were established with certainty. It was shown that she possessed to the line run by Womack that was evidenced by markings made by him and also by vestiges of an old fence located along that line, many of which were still visible at the time of the trial. And such possession, we think, was sufficient to give Mrs. Watson

(and these plaintiffs) a 30 years' prescriptive title to the disputed 14 acres.

■ We find nothing in Article 826 of the Revised Civil Code (assuming that it is applicable here) which mitigates against this holding. In fact, the second paragraph thereof clearly indicates that a boundary need not be a fence or other "enclosure" in the strict sense of the word, but that it may be evidenced by markings commonly used by surveyors.

■ The defendant further contends that the plaintiffs are estopped to deny its title since they are the heirs, and have accepted the succession, of their mother, Mrs. Irene Young Watson, who was a party to the conveyance instrument in which she and her co-heirs warranted the title to William P. Young, one of defendant's ancestors in title. However, estoppel is not applicable where, as here, the vendor of land actually possessed it as owner for a period of 30 years following the sale. Succession of Zebriska, 119 La. 1076, 44 So.2d 893 and Frost Lumber Industries, Inc. v. Harrison et al., 215 La. 767, 41 So.2d 674. This principle was recognized by us in the very recent case of Boyet et al. v. Perryman et al., 240 La. 339, 123 So.2d 79, 87. Therein, we said: " * * * Under this prescription even a trespasser without any title can acquire ownership of property after 30 years' adverse possession. Since no title is necessary for acquisition by the 30 years' prescription, there cannot be any estoppel by warranty against those pleading this prescription. In such a case the 30-year possessor is in no way disputing the title of the record owner, but is averring only that he himself has acquired ownership solely by adverse possession for 30 years. * * *"

In the district court and in the Court of Appeal the defendant unsuccessfully claimed title by the acquisitive prescription of 10 years. Here, defense counsel (in oral argument) indicated that they had abandoned the claim. Nevertheless, we have considered it, and we notice that the defendant has failed to show acts of possession on the tract covered by its title for the required period of 10 years prior to the date on which this suit was filed.

For the reasons assigned the writ heretofore issued by us is recalled, and the judgment of the Court of Appeal is affirmed. The defendant shall pay all costs.