182 So.2d 319

**The UNION BANK**

v.

**Anthony J. ROY, Sr.**

No. 47567.

June 7, 1965.

Dissenting Opinion June 14, 1965.

On Rehearing Jan. 17, 1966.

See, also, 247 La. 255, 170 So.2d 510.

Laborde, Lafargue & Brouillette, Ryan J. Couvillon, Marksville, for plaintiff-relator.

Roy & Roy, Marksville, Stafford & Pitts, Alexandria, Anthony J. Roy, Sr., Marksville, in pro. per. for defendant-respondent.

SUMMERS, Justice.

The Union Bank instituted a possessory action against Anthony J. Roy, alleging that for more than one year it has been in possession of a lot of ground in the town of Marksville fronting 48 feet 10 inches on the west side of Main Street by a depth east and west along Mark Street of 108 feet.

It is alleged that the defendant has constructed a fence enclosing the western 3½ feet of this property within the year preceding the suit thereby disturbing plaintiff's enjoyment and quiet possession. Injunctive relief was also sought to compel removal of the fence pending the possessory action as authorized by Article 3663 of the Code of Civil Procedure.

From a judgment in plaintiff's favor, defendant appealed to the Third Circuit. There, by a divided court, the judgment was reversed. See 168 So.2d 716 (La.App. 1964). We granted certiorari on plaintiff's application.

Plaintiff has advanced the contention that defendant, by averring ownership in his responsive pleadings, has converted the suit into a petitory action. Although these averments of ownership were made, we find that they were urged by defendant to permit the introduction of evidence that he possessed as owner, the extent of that possession and the length of time during which the defendant and his ancestors in title had possession. Such proof of ownership or title is permitted under an exception to the rule that ownership or title is not an issue in a possessory action. La. Code Civ.P. art. 3661 (1960).

Under the theory that possession of a part is possession of the whole, allegations in a petition concerning ownership may be necessary to establish the extent of that ownership and the consequent extent of the possession incident thereto. La.Code Civ. P. art. 3661 (1960); La.Civil Code art. 3437 (1870). In these circumstances ownership, as such, is not an issue to be adjudicated, but it is alleged simply to make the pleadings broad enough to permit proof concerning the nature and extent of the possession. Therefore, in a possessory action it takes more than an allegation of ownership in defendant's answer to convert that action into a petitory action. There must be a prayer by defendant for an adjudication of ownership. In the absence of such a prayer the action is not converted. Walmsley v. Pan American Petroleum Corp., 244 La. 513, 153 So.2d 375 (1963).

It was proper, therefore, to allege—and it is proper for us to consider—the ownership of the parties in the possessory action as an incident to determining the nature

and extent of the possession exercised on the property in dispute.

Furthermore, anticipating the fact that plaintiff would establish the one-year corporeal possession of the 3½-foot strip required to maintain its possessory action, the defendant Roy has urged that plaintiff's possession of the disputed strip was precarious and for him as plaintiff's vendee. This position is based upon the contention that the disputed strip of land had been conveyed to Roy by deed in 1937. Therefore, an examination of that deed and other deeds bearing on that issue is necessary in this connection also, for if plaintiff conveyed the 3½-foot strip to defendant, the possession of that strip by plaintiff would be precarious and would under most circumstances inure to defendant's benefit. Such a finding would mean that plaintiff did not have the possession requisite to maintain the possessory action—a vital issue in this cause. Watson v. Crown Zellerbach Corporation, 240 La. 500, 124 So.2d 138 (1960); Boyete v. Perryman, 240 La. 339, 123 So.2d 79 (1960); Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1950); Frost Lumber Industries, Inc. v. Harrison, 215 La. 767, 41 So.2d 674 (1949); John T. Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 839, 53 So. 22 (1910).

Prior to July 31, 1935 the Avoyelles Bank owned the entire southern 48.83 feet of Block No. 5 in the town of Marksville,

bounded on the east by Main Street and on the west by Monroe Street. By deed dated July 31, 1935, the Avoyelles Bank sold to the Union Bank the following property:

"That certain town lot, and the bank buildings and all other improvements thereon and thereto belonging, situated in the town of Marksville, Louisiana, known as the Avoyelles Trust and Savings Bank Building and lot on which the same is situated, and more fully described as follows: The said lot to have a front of forty-eight feet (48') ten inches (10") on Main Street beginning from the corner of Main and Mark Streets, and extending back a depth of one hundred seventy-nine feet (179') between parallel lines. Bounded on the north by property of the vendor or the Post Office lot, and property of Mrs. H. C. Schrieber, on the south by Mark Street, on the east by Main Street, and on the west by property of the Avoyelles Trust and Savings Bank. All as per plat of survey of E. B. Messick, Surveyor, hereto annexed as part hereof.

"It is agreed that the purchaser shall always leave open a driveway or passage, and to be used only as such, for the benefit of the lot now belonging to the vendor and known as the Post Office lot which is located immediately north of the property herein sold, said driveway or passage to be located im-

mediately west of the bank building or ninety-eight feet (98') from the eastern property line of the property herein sold, and to be ten feet (10') front on Mark Street running back between parallel lines to the said Post Office lot, said driveway or passage being shown on the plat of survey of E. B. Messick, Surveyor, attached to this sale."

On November 3, 1937, the Union Bank conveyed to Anthony J. Roy, defendant, a portion of the above lot described as follows:

"A certain town lot situated in the corporate limits of the Town of Marksville, Avoyelles Parish, Louisiana, beginning at a point ten (10) feet back of the back wall of the present Union Bank Building which is one hundred (108) feet from the Southeast corner of the Union Bank lot along Mark Street, a distance of seventy-one (71) feet from said point along Mark Street by a depth between parallel lines of forty-eight and 83/100 (48.83) feet bounded on the north by Estate of G. L. Mayer, and Mrs. Harry Schrieber; South by Mark Street; East by property belonging to the Union Bank; and West by property belonging to the Avoyelles Trust and Savings Bank."

The controversy arises because the first two calls in the latter description cannot be reconciled. A point 10 feet back of the rear wall of the bank building is only 105 feet from the southeast corner of the bank's lot as determined by surveys, instead of 108 feet as called for by the deed. The question is whether the point 10 feet back of the wall or the southeast corner of the lot as surveyed is to be used as the starting point. At issue is the question of who was in possession of a strip of land approximately three feet wide at the western extremity of the bank's lot or the eastern extremity of Roy's lot.

In resolving the controversy, the Court of Appeal gave credence to the first call only, because "there is a definite monument which may be observed by the ordinary layman, namely, the west or back wall of the plaintiff bank building." As a result, plaintiff's suit was dismissed.

We cannot agree with the Court of Appeal. Monuments such as the bank building are usually allowed to control, but when they do not meet the calls of the deeds, as in this case, they must give way to the weaker guides. Meyer v. Comegys, 147 La. 851, 86 So. 307 (1920).

If these were the only two calls in the description, we would be compelled, because they are irreconcilable, to look beyond the instrument for the intent of the parties. But we are of the opinion that the intention of the parties, which is determinative, may be ascertained by the deeds. A perusal of the four boundaries given

in the deed to Roy discloses conclusively that the 71-foot parcel conveyed was to be taken from the western end of the larger 179-foot lot which the Union Bank had previously acquired.

In no uncertain terms the deed recited that the lot conveyed was bounded on the west "by property belonging to the Avoyelles Trust and Savings Bank," the vendor. Thus 179 feet, less the western 71 feet conveyed to Roy, leaves 108 feet remaining for the Union Bank, the exact figure used in the second call—"which is one hundred and eight (108) feet from the southeast corner of the Union Bank lot along Mark Street." This measurement conforms with the curb of the driveway in the rear of the bank. The bank contends that that curb is its western boundary.

A different conclusion would render useless several important calls. For example, to accept the point of beginning at 10 feet from the rear wall of the bank building would nullify the "108 feet from the southeast corner of the Union Bank lot along Mark Street" provision. But more important, and apparently unknown since 1937 to either the parties or the public, according to the McMath survey, accepting a starting point 10 feet back of the back wall of the bank building would leave an isolated strip of land 3.4 feet in width belonging to the Union Bank between Roy's western boundary, as he sees it, and the property formerly belonging to the Avoyelles Bank

described as Roy's western boundary in his deed. This would bound the lot conveyed to Roy on the west by property belonging to the Union Bank when in fact the western boundary at the time of the sale to Roy was given as property belonging to the Avoyelles Bank.

Our law demands that weight be accorded to *all* parts of the description of lands conveyed. Article 1955 of the Civil Code provides that "All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act."

In Smith v. Chappell, 177 La. 311, 148 So. 242 (1933), this Court remarked:

"Where, as in this case, there are conflicting calls in the deed, and where the first call is followed by a general description which manifestly was intended to be a summing up of the intention of the parties as to the premises conveyed, such general description controls all prior words or phrases used, if sufficient to identify with certainty the premises conveyed."

In Williams v. James, 188 La. 884, 178 So. 384 (1938), we again approved this statement: "'* * * if the land conveyed is sufficiently identified by certain parts of the description an impossible or senseless course should be disregarded, and the deed sustained.'"

In the instant case, the description fixed with certainty the western boundary, the northern boundary and southern boundary. Inconsistencies occur only with regard to the eastern boundary. Yet, the length of the lot was definite—71 feet; and, when this lot is affixed in the western end of the larger Union Bank tract, as decreed by the three certain boundaries, the eastern end of the Roy lot falls on the driveway curb at a point 108 feet from the southeast corner of the bank's lot. This is just what is established by surveys prepared on behalf of both plaintiff and defendant. This was manifestly the intent of the parties when all of the descriptions in the deeds are considered.

High rank is given to boundaries by our jurisprudence. In City of New Orleans v. Joseph Rathborne Land Co., 209 La. 93, 24 So.2d 275 (1945), this Court declared:

"* * * the rule is 'that calls for quantity must yield to the more certain and locative lines of the adjoining owners. Such lines are certain, or they can be made certain, and may be platted so as to show the exact course and distance. They are treated as a sort of natural monument, and must prevail over the more general and less distinct designation by quantity. (Citations omitted.)' "

In resting his case on the first call, the defendant advances various reasons why this call should prevail. First, in the Union Bank acquisition, the vendor, who was the Avoyelles Bank, reserved a driveway from the lot conveyed for the use of those occupying its property located immediately north of the lot sold. The driveway was referred to as "located immediately west of the bank building or ninety-eight (98) feet from the eastern property line of the property herein sold, and to be ten (10) feet front on Mark Street." Because of this reservation, Roy contends, plaintiff had to retain 10 feet behind the bank building for the driveway when it sold to him. He says this accounts for the commencement of his lot at the western edge of the driveway or a point 10 feet back of the back wall of the bank building.

But the fact remains that although the driveway was to be located "immediately west" of the bank building, it also *commenced* "ninety-eight (98) feet from the eastern property line" of the lot acquired by the bank, which point is 3 feet west of the bank building. Ten feet from that point along Mark Street would coincide with the 5″ x 8″ concrete curb located approximately 13 feet behind the bank building. This concrete curb is exactly 108 feet from the southeast corner of the bank's lot and is considered by the Union Bank to be its western boundary, as we have already noted. In this context, therefore, the phrase "immediately west of the bank building" would not require measurement from the bank wall proper so long as it was nearly so.

Secondly, defendant further seeks to explain the conflict in the first two calls—the one 10 feet back of the back wall of the bank building and the one calling for the 108 feet from the southeast corner of the bank lot. He shows that the sidewalk encroaches 3 feet into Main Street. If the measurement "from the southeast corner of the bank lot" is taken from the sidewalk corner, then 108 feet from that point is 10 feet back of the bank building. He reasons that this is what happened and is responsible for the conflict.

But this result cannot obtain. The property in question is located in Block 5. Main Street is 50 feet wide. The Messick plat, prepared in 1937, shows the length of Block 5 on Mark Street to be 225 feet. The recent McMath Plat also shows the length of the block to be 225 feet, *excluding the sidewalk overhang on Main Street*. If the sidewalk is added, the entire length would be 229 feet. According to the Frost survey the sidewalk encroaches 3.5 feet into Main Street, which would make the length of the block 228.5 feet with the sidewalk added. Under either survey, accepting defendant's theory would place a portion of plaintiff's property in the street and would disrupt the measurements of all other lots along Mark Street in Block 5.

If the length of the lot along Mark Street is to be measured from the corner formed by the sidewalk curb rather than from the true surveyed intersection of the streets, we would have to assume that a like starting point should be used to measure the 48.83-foot depth of the lot along Main Street.

The Frost survey prepared for plaintiff shows that the sidewalk encroachment into Mark Street is almost three feet. A measurement from this sidewalk curb would place the north boundary of the Union Bank's lot three feet within its building, some three feet short of the old Post Office building and not reaching the party wall between the two buildings—the admitted northern boundary between the Union Bank lot and the old Post Office lot.

Obviously this would be erroneous and emphasizes the fallacy of defendant's attempt to begin the measurement from the sidewalk curb instead of the surveyed corner. Just as there is no valid reason for measuring from the sidewalk curb to determine the 48.83-foot width of the lot, there is no valid reason for measuring from the sidewalk curb to determine the 108-foot length of the lot. The lot's dimensions can only be reconciled by use of the surveyed southeast corner.

We conclude that the Union Bank did not convey the controversial three-foot strip to Roy and the deeds sustain the view that the bank's western boundary is the 5-inch by 8-inch concrete driveway curb in the rear of the bank running from Mark Street to the bank's northern boundary.

On the question of the possession of the disputed realty, the record supports

the finding of fact of the trial court that plaintiff exercised corporeal possession of the disputed strip of land for one year prior to instituting suit. There being no manifest error in those findings, to the following extent we accept them and quote from the trial judge's opinion:

"Now, going to the possession of the parties. Admittedly by the evidence, Roy's lot, at the time of his purchase and presently, was and is a vacant lot. His possession thereof was intermittent and not continuous. At times he had the grass cut thereon; he or his lessees used it for parking; he had some dirt or pit run gravel dumped upon it to fill holes; his son and a partner used it to exhibit for sale, tomb stones or monuments. On one occasion, he erected a chain fence along a portion of the South boundary, so automobile owners would not drive their cars thereon for parking. He, the defendant, rented it to the Union Bank, and to Richard Coco, as a parking lot for his employees. The Court concludes that his possession of the lot was consistent with the nature of the property. None of these acts were upon the disputed area and within the last year next preceding the building of the complained of fence. Of course, it is contended that since he did these acts at times, on portions of his lot, that his possession extends to the whole, within the limits of his

title. This is based upon the principle of law that a possession of a part of the property, under a title, is possession of the whole; but it should be noted that at no time in the twenty-five (25) years since Roy's purchase, did he attempt to possess any portion of the driveway west of the Bank Building and east of the five (5″) inch by nine (9″) inch concrete curbing or wall, to the exclusion of others, until he built the fence complained of, a few days before the filing of suit.

"The Union Bank, on the other hand, has a large banking building upon its lot, which adjoins that of Roy on the east. And it has been in business on this lot, physically, continuously and visibly and actually, using many offices and employees in its banking business and house, situated upon the property. It, too, maintains that this actual physical possession of its lot, through its conduct of banking facilities, constitutes possession of the whole under its title. The property in dispute is between the fence admittedly built by the defendant, just before the filing of suit, and this five (5″) inch by nine (9″) inch driveway concrete wall or curb located three (3′) feet west of said fence. The pictures filed in evidence clearly show this to be true.

"In the two (2) years preceding the fence building or alleged disturbance,

plaintiff rented the back part of the Bank Building to Mrs. Skeet Moreau, for a hat shop, as the Bank's tenant, until September 1, 1962. She was given use of the driveway between the back wall of the Bank Building on the east and the five (5″) inch by nine (9″) inch concrete curb or driveway wall on the west. She parked her car there daily. The Bank's janitor cleaned up the same space weekly. He burned papers and trash from the operations of the Bank, as its janitor, in that same space or driveway, almost daily, except banking holidays. Beginning about September 1, 1962, an extensive renovation program was undertaken by the plaintiff, to change the back part of the building as banking facilities instead of rental spaces for offices. The west part of the building got a general 'face lifting', and a drive-in window banking facility was under construction when the disturbance occurred. The contractors working on this project for the Bank and the sub-contractors, used the driveway extensively, and the strip of land in question, as a loading and unloading space. Scaffolds, ladders, working space, etc., occupied the area in question between September 1, 1962 and to date, that the fence was built. Some of this work continues even now, to the east of the complained of fence. Freight was unloaded there for the

Bank in the same space during that year. So, the Bank's possession or acts of possession including its own continuous occupancy as a banking institution for years, were actual, visible and more or less continuous on its lot, including this driveway west of the Bank Building, proper, and east of the so-called concrete curbing or driveway wall. This existed for more than a year, next preceding the alleged disturbance by the defendant."

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is reversed and set aside and the judgment of the trial court is affirmed, reinstated and made the judgment of this Court, maintaining plaintiff in the quiet and peaceable possession of the following described property:

A certain lot or parcel of land situated within the corporate limits of the town of Marksville, Avoyelles Parish, Louisiana, bounded as follows: On the North by property of Alton J. Normand and H. L.. Sportono, on the East by Main Street, on the South by Mark Street and on the West by a concrete curb five (5) inches in width and eight (8) inches in height which extends from Mark Street in a South to North direction the entire depth of the lot herein described.

Defendant to pay all costs of these proceedings.

SANDERS, Justice (dissenting).

I am of the view that the contested deed is ambiguous. Hence, resort must be had to extrinsic evidence for its interpretation. LSA–C.C. Arts. 1945, 1950, 1956, 1957, 2474; Krauss v. Fry, 209 La. 250, 24 So.2d 464. The extrinsic evidence, including the positive testimony of the vendee that the boundaries were pointed out to him at the time of the purchase, supports the judgment of the Court of Appeal. See 168 So.2d 716. Being of the opinion that the judgment of the Court of Appeal is correct, I dissent.

FOURNET, Chief Justice (dissenting).

The majority, in construing the deed in controversy, obviously overlooked certain legal tenets universally obtaining that courts are bound to give legal effect to the contract according to the intent of the parties which must be ascertained from the language used [1], and where descriptions are in conflict, they should be reconciled and harmonized if possible and when they can not be reconciled, then a construction must be adopted which best comports with the intention of the parties, keeping in mind always the circumstances which controlled or influenced the contract.[2] Stated differently, a construction which neutralizes one or more provisions of the deed should not be adopted if it is susceptible of another which gives effect to all of the provisions.[3]

The record discloses The Union Bank acquired the property located in the Town of Marksville, fronting 48.83 feet on Main Street, running between parallel lines 179 feet on Mark Street, appearing as the unshaded part of a plat [4] hereinbelow prepared in order that we can intelligently follow the various calls in construing the deed.

1. Snelling v. Adair, 196 La. 624, 199 So. 782 and authorities cited therein; Art. 1945, R.C.C. of 1870.

2. Smith v. Chappell, 177 La. 311, 148 So. 242.

3. Glassell v. Richardson Oil Co., 150 La. 999, 91 So. 431.

4. This plat is essentially that of Edward B. Messick, Surveyor, which is referred to in the deed.

Legend:

1—The above plat is essentially the same as the one made by Edward B. Messick, Surveyor, on Sept. 16, 1937 at the request of Union Bank of a survey previously made by him July 30, 1935 for the Avoyelles Trust & Savings Bank who then owned all the southern portion of block 5 of the Town of Marksville, except 6 feet, fronting 225' on Mark St. according to the plat being measured from the sidewalk curb on Monroe St. to the sidewalk curb on Main St. Across this property is a concrete curbing which is 13' back of the back wall of the bank.

2—Of this property Avoyelles Bank by deed dated July 31, 1935 transferred to Union the eastern portion fronting 179 feet on Mark Street.

3—In this deed there was reserved a 10' right-of-way running parallel with the back wall of the bank building for the use of its property to the north of the bank for the post office or beginning 98' from the south-east corner.

4—Union Bank by deed Nov. 3, 1936 conveyed to Roy the western 71' of the property it acquired from Avoyelles Bank that is at a point beginning at a stake measured to the western boundary of the driveway reserved in the deed to Union Bank or 108' to the south-east corner of the bank property where a fence was erected by Roy immediately before this litigation started.

5—The strip between the fence constructed by plaintiff, running parallel 10' from the bank wall and the concrete curbing forms the basis of this suit.

MONROE STREET

Avoyelles Bank & Trust Company now (Maxwell Bordelon)

40'

Anthony J Roy

Mark Street

71' 179' 225' 98' 108'

CONCRETE CURBING

FENCE 10'

The Union Bank Bldg.

Avoyelles Trust & Savings Bank - now Alton Normand (old post office)

SIDEWALK

MAIN STREET

In the deed by which the plaintiff acquired the property on July 31, 1935, is contained the stipulation:

" * * * that the purchaser shall always leave open a driveway or passage, and to be used only as such, for the benefit of the lot now belonging to the vendor and known as the Post Office lot which is located immediately north of the property herein sold, said driveway or passage to be located immediately west of the bank building or ninety-eight (98) feet from the eastern property line of the property herein sold, and to be ten (10) feet front on Marks Street running back between parallel lines to the said Post-Office lot, said driveway or passage being shown on the plat of survey of E. B. Messick, Surveyor, attached to this sale."

Reference to the plat will show that while the survey was made July 30, 1935, it was not prepared until September 16, 1937 [5] at plaintiff's request and on the 3rd of November following, Anthony J. Roy, Sr., defendant in the instant case, acquired by deed from plaintiff the western 71 feet of the property it had acquired from Avoyelles Trust & Savings Bank, under the following description:

"A certain town lot situated in the corporate limits of the town of Marksville, Avoyelles Parish, Louisiana, beginning at a point ten (10) feet back of the back wall of the present Union Bank Building which is one hundred eight (108) feet from the Southeast Corner of the Union Bank lot along Mark Street, a distance of seventy-one (71) feet from said point along Mark Street by a depth between parallel lines of forty-eight and 83/100 (48.83) feet bounded on the North by Estate of G. L. Mayer and Mrs. Harry Schrieber; South by Mark Street; East by property belonging to the Union Bank; and West by property belonging to the Avoyelles Trust and Savings Bank."

Plaintiff, in renovating and improving the "Union Bank Building", claims its property extends 13 feet "back of the back wall" of the building, instead of 10 feet as recited in its deed to the defendant, which prompted the latter to construct a fence 10 feet from the wall, according to the call in his deed; whereupon, plaintiff, averring it was in possession of the strip for more than one year, instituted a possessory action.

From the foregoing, it is obvious the plaintiff intended to and did sell to Roy all of the property it had acquired in 1935 from the Avoyelles Trust & Savings Bank *west* of the driveway which had been specifically reserved in its deed "for the benefit of the lot now belonging to the vendor and known as the Post Office lot * * * or ninety-eight (98) feet from the eastern property

5.  See footnote 8.

line of the property herein sold * * *," as is clearly expressed by the language used in the deed from plaintiff to Roy wherein the same is described as "beginning at a point ten (10) feet back of the back wall of the present Union Bank Building." The clause immediately following, "which is one hundred eight (108) feet from the Southeast Corner of the Union Bank Building", simply means that the 10 feet passageway had been added to the 98 feet call contained in plaintiff's deed from Avoyelles Trust & Savings Bank, thereby establishing defendant's eastern property line 108 feet from the southeast corner of plaintiff's property as it appears on the plat of the survey by Messick.

Thus it may be seen there is no difficulty at all in reconciling the different calls in the deeds by the language used in the deeds themselves, when considered in connection with the plat made specifically at the request of plaintiff a short time before the preparation of its deed to the defendant, and was obviously used in the confection thereof. This construction harmonizes with the boundary of the property sold as reflected by the plat of the survey giving the defend-

ant the full 71 feet on Mark Street that he had purchased, the Bank retaining the balance of 179 feet it previously purchased, or 108 feet, thus conforming with the boundaries set forth in the deed as being: "bounded on the North by Estate of G. L. Mayer and Mrs. Harry Schrieber; South by Mark Street; East by property belonging to the Union Bank; and West by property belonging to the Avoyelles Trust and Savings Bank," the latter being now owned and occupied by Maxwell Bordelon.

That that was the intention of the parties fully supports the uncontradicted testimony of the defendant. While the plaintiff did subpoena several witnesses who were connected with the Union Bank as employees, officers, or members of its Board of Directors at the time of the sale to Roy, none testified in rebuttal, the presumption being, therefore, that if they had been called to testify, their testimony would be adverse to the plaintiff's contention.[6]

It is apt to observe that there was inscribed on the plat made by Messick a notation [7] specifically calling to the plaintiff's attention if it intended to use the con-

6. Rubenstein v. Files, 146 La. 727, 84 So. 33; Perez v. Meraux, 201 La. 498, 9 So. 2d 662; Succession of Yeats, 213 La. 541, 35 So.2d 210; Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582.

7. "Note: Drive way provision made in sale from Avoyelles Trust & Savings Bank to Union Bank of roadway 10′ wide at a distance of 98′ from S.E. Cor. of lot

sold or intersection of Main St. and Mark, but same is erroneous as about 111.00 feet from said intersection is required to provide for a 10 ft. st. or roadway using drive way concrete wall as western boundary—

"Strip remaining on Monroe St. 6′ x 48.83 apparently belongs to the Avoyelles Bank of Marksville, title not transferred to Avoyelles Trust & Savings Bank."

crete wall as its western boundary, 111 feet, instead of 108 feet from the southeast corner of the property would be necessary to satisfy the 10 feet servitude of passage reserved in its deed of acquisition from Avoyelles Trust & Savings Bank. Despite this information, the deed which was drafted by the Bank officials or its attorney by designating the call as being 10 feet "back of the back wall of the present Union Bank Building", clearly shows that it did not intend to use the concrete wall as its western boundary. According to the plat upon which these calls were based in the deed in controversy, the concrete wall placed the western boundary of the plaintiff 13 feet "back of the back wall of the present Union Bank Building", instead of 10 feet as recited in the deed, and 111 feet, instead of 108 feet, from the southeast corner as recited in the deed.

Plaintiff now seeks to extend its western boundary to the concrete wall, relying on surveys recently made for the purposes of this litigation and on which the majority rests its decision, showing plaintiff's property begins at a point 6.4 feet in front of plaintiff's building. The fallacy of this claim lies in the fact that the drafter of the deed in controversy did not have this information at the time of its confection. On the contrary, the officer or attorney who prepared the deed more than a quarter of a century ago, had only the plat of a survey that had been previously made at the request of plaintiff's vendor, which delineated the extent of the property plaintiff acquired and in accordance with which the calls in its deed to the defendant were designated. So it is absurd, to say the least, that the Bank intended to sell and Roy intended to buy according to surveys and plats that did not exist at the time of the execution of the deed.

Furthmore, to accept the basis for plaintiff's claim and at the same time give the defendant his full 71 feet fronting on Mark Street, as clearly shown by a survey prepared by Lloyd Frost, would result in extending Roy's property line so that it would encroach on Bordelon's property, taking several feet of frame buildings there located. In other words, Roy would be short of the 71 feet fronting on Mark Street about 3.5 feet. Whereas, the construction on which defendant's claim is based, does not, as claimed by the majority, "disrupt the measurements of all other lots along Mark Street on Block 5," as the owners of these lots are not parties to this suit, and besides, we have no knowledge of the extent of their titles. On the contrary, defendant's position is fully confirmed by the fact that, as shown by the plat [8] pre-

8. "State of Louisiana
"Parish of Avoyelles:
"At the request of W. L. Caldwell, President of the Avoyelles Bank and Trust Co., I have surveyed and measured the boundaries of a certain town lot sold to the Union Bank on July 31, 1935, and filed Al. Book, A67, folio 160, repre-

pared by Messick for Avoyelles Trust & Savings Bank, prior to its sale to the plaintiff, its vendor, owned all of the south portion of the block between Main and Monroe Streets, measuring 225 feet along Mark Street, (with the exception of the western 6 feet); of which plaintiff acquired the eastern 179 feet by deed dated July 31, 1935, thus leaving Avoyelles Trust & Savings Bank owning 40 feet immediately west thereof which it sold to Charles Mayeux on November 8, 1937, and is now owned by Maxwell Bordelon.

Defendant's claim is further corroborated by Mr. Bordelon who testified that he had no difficulty in locating his property by referring to the deed of the Avoyelles Trust & Savings Bank to the plaintiff and the one from the plaintiff to the defendant and checking with the recorded plat made for plaintiff. He stated that after locating a stake on Mark Street indicated by the plat, he measured the distance between it and the "back of the back wall" of the Bank, and found it was 81 feet, which coincided with what the plaintiff recited in its deed to Roy, or 98 feet from the curb of the sidewalk in front of the building; and immediately thereafter planted a hedge delineating his

sented by that portion of diagram shaded yellow—

"On January 16, 1899, Geo. L. Mayer conveyed to Avoyelles Bank of Marksville a town lot measuring 48' 10" (48.83) on Main St. by 48' 10" on Monroe St., by 225¼' on Mark St. * * * (Then

eastern property line beginning at that stake, which has been recognized as the boundary between the two properties ever since.

The majority obviously overlooked the fact that if plaintiff, by its deed of July 31, 1935, from Avoyelles Trust & Savings Bank did not acquire 179 feet, as recited therein, and it extended 3.5 feet into the street as claimed by its witnesses, this shortage can not be charged to its vendee, defendant herein, because under the express provisions of the Revised Civil Code, the plaintiff, as "seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells." Art. 2475, including " * * * the buyer's peaceable possession of the thing sold * * *." Art. 2476.

I, therefore, respectfully dissent from the majority.

## ON REHEARING

HAMLIN, Justice.

We granted rehearing in this matter in order that we might reconsider our decree maintaining plaintiff, The Union Bank,

follows a chain of title unrelated to the issue at hand.)

"Surveyed this 30th day of July, 1935 and plat prepared this 16th day of September, 1937 of survey for Union Bank."

Signed: "Edw. B. Messick, Surveyor."

in the quiet and peaceable possession of the following described property:

"A certain lot or parcel of land situated within the corporate limits of the town of Marksville, Avoyelles Parish, Louisiana, bounded as follows: On the North by property of Alton J. Normand and H. L. Sportono, on the East by Main Street, on the South by Mark Street and on the West by a concrete curb five (5) inches in width and eight (8) inches in height which extends from Mark Street in a South to North direction the entire depth of the lot herein described."

Wherein there have been many opinions and dissenting opinions written and innumerable briefs filed in this protracted litigation, presently it suffices to say that we are only concerned with making a determination of the location of the western boundary of property which The Union Bank may possess or the eastern boundary of property which Anthony J. Roy, Sr. may possess. In so doing, we are constrained to consider two monuments, namely: (1) the rear wall of The Union Bank building, and (2) a concrete curbing some five (5) inches in width and eight (8) or nine (9) inches in height. As stated in our original opinion this is a possessory action involving a strip of ground approximately three and one-half (3½) feet in width, but in order to determine which of the instant parties is entitled to possession,

a consideration of ownership is imperative. Louisiana Code Civil Procedure, Art. 3661.

On January 30, 1899, George L. Mayer sold to the then Avoyelles Bank of Marksville the south half of a town lot situated in the Town of Marksville, Louisiana. In so many words, the Act of Sale recited that the lot fronted on Main Street, forty-eight (48) feet, ten (10) inches, and ran from the corner of Main and Mark Streets the entire length of one block of Mark Street to the corner of Mark and Monroe Streets, then running on Monroe Street forty-eight (48) feet, ten (10) inches (the act uses the word "corner"). The plats and surveys in the opinions rendered in this matter show that the distance from curb street corner to curb street corner was approximately two hundred and twenty-five (225) feet.

Shortly after the sale, the Avoyelles Bank of Marksville dedicated a six (6) foot banquette or sidewalk, at the western or Monroe Street end of its lot.

On July 31, 1935, the Avoyelles Trust and Savings Bank, the then owner of the lot, represented by its President, L. P. Roy, Sr., sold one hundred and seventy-nine (179) feet of its property to The Union Bank. The Act of Sale recited in part:

"* * * The said lot to have a front of forty eight feet (48'10") ten

inches on Main Street beginning from the corner of Main and Mark Streets, and extending back a depth of one hundred seventy nine (179) feet between parallel lines. Bounded on the north by property of vendor or the Post Office lot, and property of Mrs. H. C. Schreiber, on the south by Mark Street, on the east by Main Street, and on the west by property of the Avoyelles Trust and Savings Bank. All as per plat of survey of E. B. Messick, Surveyor, hereto annexed as part hereof.

"\* \* \*

"It is agreed that the purchaser shall always leave open a driveway or passage, and to be used only as such, for the benefit of the lot now belonging to the vendor and known as the Post Office lot which is located immediately north of the property herein sold, said driveway or passage to be located *immediately* west of the bank building or *ninety-eight (98) feet* from the *eastern property line* of the property herein sold, and to be ten (10) feet front on Marks Street running back between parallel lines to the said Post Office lot, said driveway or passage being shown on the plat of survey of E. B. Messick, Surveyor, attached to this sale." (Emphasis ours.)

On November 3, 1937, recorded December 6, 1937, The Union Bank sold to Anthony J. Roy, seventy-one (71) feet described as follows:

"A certain town lot situated in the corporate limits of the town of Marksville, Avoyelles Parish, Louisiana, *beginning at a point ten (10) feet back of the back wall of the present Union Bank building* which is one hundred eight (108) feet from the Southeast Corner of the Union Bank lot along Mark Street, a distance of seventy-one (71) feet from said point along Mark Street by a depth between parallel lines of forty-eight and 83/100 (48.83) feet bounded on the North by Estate of G. L. Mayer and Mrs. Harry Schrieber; South by Mark Street; East by property belonging to the Union Bank; and *West by property belonging to the Avoyelles Trust and Savings Bank.*" (Emphasis ours.)

On November 8, 1937, recorded November 8, 1937, the Avoyelles Trust and Savings Bank sold to Charles J. Mayeux, "A certain lot or parcel of ground situated at the corner of Mark and Monroe Street \* \* \* measuring forty (40) feet on Mark Street, on a depth on Monroe Street, between parallel lines, of forty-eight and 83/100 (48.83) feet \* \* \*"

A reading of the above acts discloses that if measurements are made on Mark Street from street curb corner to street curb corner, we have a ten (10) foot banquette on Main Street, an eighty-eight

(88) foot Bank Building, a ten (10) foot passageway, seventy-one (71) feet purchased by Roy, forty (40) feet purchased by Charles J. Mayeux and now owned by Maxwell Bordelon, and a six (6) foot banquette on Monroe Street, all measurements on the instant block of Mark Street totalling two hundred and twenty-five (225) feet.

The record discloses that when defendant purchased his seventy-one (71) foot lot from The Union Bank on November 3, 1937, the Bank was honoring the servitude to which it had agreed on July 31, 1935; *immediately* west of the Bank building a ten (10) foot passageway ran in a northerly and southerly direction and was used for ingress and egress purposes. The record also discloses that some thirteen and one-half (13½) feet from the rear wall of the Bank a concrete curbing, which, as stated supra, was five (5) inches in width and eight (8) or nine (9) inches in height, ran the depth of the instant property from South to North. This curbing had been in place prior to Roy's purchase, and Roy testified that no one told him that the curbing was his eastern boundary. The record further discloses that there was an iron peg or stake located in the ground approximately eighty-one (81) feet from the rear wall of the Bank (which could have been considered indicative of the western boundary of defendant's property). Defendant saw this peg before his pur-

chase, and he testified that one of the Bank Directors told him it came from a small sawmill. He also stated that the Bank Officials with whom he was negotiating called his attention to the existing servitude, stating that there was a passageway of ten (10) feet going back to the Post Office building. Maxwell Bordelon, the owner of the property to the West of Roy's lot, testified that he moved to his present location, the corner of Mark and Monroe Streets, during 1945, and that there was an iron stake located in the ground eighty-one (81) feet from the rear wall of The Union Bank Building when he bought his property. It had been there as long as he could remember.

The evidence preponderates that after his purchase defendant possessed the property up to the ten (10) foot passageway. At times he leased his lot to the bank; he permitted his son and a friend to display cemetery monuments on the lot; and intermittently cars were parked on the lot, portions of them extending beyond the curbing. The Union Bank used the ten (10) foot passageway, and at times extended its use to the curb, which as stated supra was thirteen and a half (13½) feet from its rear wall.

In a renovation program, The Union Bank included the construction of a drive-in window and paving of the passageway. Fearful that the Bank would encroach upon his property, defendant constructed a

fence approximately ten (10) feet from the rear wall of the Bank and enclosed within its confines the concrete curbing; he considered this fence his eastern boundary. Assuming that the concrete curbing was the Bank's western boundary, the officials of The Union Bank instituted this possessory action; its petition, which includes a prayer for injunction, alleges in part:

"That *ANTHONY J. ROY* * * * without any legal right to perform the acts hereinafter set forth, enter upon petitioner's property * * * and did at the time proceed to construct a fence, using creosoted wooden posts and barbed wire, from a point approximately three and one-half (3½) feet East of petitioner's West line on Mark Street and extending in a Northerly direction approximately parallel to petitioner's West boundary line to the North boundary of petitioner's property or thereabout.

"That the acts of defendant hereinabove alleged constitute a disturbance in fact of petitioner's possession, as defined by Article 3659 of the Louisiana Code of Civil Procedure, and prevent petitioner, as the owner and possessor of the immovable property described * * * from enjoying its possession quietly, said acts being an obstacle in the way of petitioner's enjoyment of the rights to which it is entitled."

The Union Bank had had a survey made which indicated that its eastern boundary was different from that set forth on the Messick plat or survey (the Messick plat or survey, made at the instance of The Union Bank, is set forth in the dissenting opinion of Chief Justice Fournet). The new survey showed that the Bank's eastern boundary was approximately three and one-half (3½) feet West of the Main Street curb, and that its western boundary was approximately three and one-half (3½) feet from the ten (10) foot passageway or up to the concrete curbing.

In his reasons for judgment, the trial judge correctly stated the contention of the Bank as follows:

"Union Bank, on the other hand, contends that the Southeast Corner of its Lot is formed by an intersection of two streets of known widths; that this is a monument in itself; that one-hundred eight (108′) feet therefrom along Mark Street, coincides and is marked by another visible monument —a concrete curb or driveway wall, five (5″) inches thick and nine (9″) inches high, extending south to north, all the way across the property; it contends that this call should prevail over the first call 'a point ten (10′) feet back of the back wall.' Plaintiff further contends that if the boundaries in the sale by it to Roy are considered, it is clear that it conveyed to

him the rectangular western seventy-one (71') feet of its acquisition from the Avoyelles Trust & Savings Bank."

The trial court granted plaintiff a preliminary injunction; ordered the removal of defendant's fence; and prohibited further disturbance of any nature of plaintiff's possession, in the area between the property of Alton Normand on the North, Main Street on the East, Mark Street on the South, and the five (5) inch by nine (9) inch West driveway wall or concrete curbing on the West.

The Court of Appeal, Third Circuit, reversed the judgment of the trial court and dismissed plaintiff's suit. (168 So.2d 716)

Certiorari was granted. This Court on original hearing reversed the judgment of the Court of Appeal and rendered the judgment set forth herein.

In controversy is the deed of November 3, 1937 between The Union Bank and Anthony J. Roy. It contains two calls for the eastern boundary of defendant's property, namely: (1) "beginning at a point ten (10) feet back of the back wall of the present Union Bank Building," and (2) "which is one hundred eight (108) feet from the Southeast Corner of the Union Bank lot along Mark Street." The determination of defendant's eastern boundary, which constitutes plaintiff's western boundary, is our immediate concern.

■ ■ The record affirmatively discloses that the above deed was prepared at plaintiff's direction. If there is any ambiguity or obscurity in a sale, it is a cardinal rule that it is construed against the vendor and those who stand in his shoes. Mestayer v. Cities Service Development Company, La.App., 136 So.2d 513; Miley v. Walker, La.App., 159 So.2d 38; West's LSA–RCC, Art. 2474. However, in interpreting legal contracts, courts are bound to give legal effect to the contract according to the intent of the parties which must be ascertained from the language employed. Snelling v. Adair, 196 La. 624, 199 So. 782; Williams v. Bowie Lumber Co., 214 La. 750, 38 So.2d 729; Fortier v. Soniat, La.App., 143 So.2d 91.

The Act of Sale from plaintiff to defendant was executed before Lester L. Bordelon, Notary and Attorney and the father of Maxwell Bordelon. At the time of its confection at the direction of the Bank, the officials of the Bank were fully aware of the details of the Messick plat or survey, which the Bank had ordered. The plat or survey contained this side notation: "Note: Drive way provision made in sale from Avoyelles Trust & Savings Bank to Union Bank of roadway 10' wide at a distance of 98' from S. E. Cor. of lot sold or intersection of Main St. and Mark, but same is erroneous as about 111.00 feet from said intersection is required to provide for a 10 ft. st. or roadway using

drive way concrete wall as western boundary—strip remaining on Monroe St. 6′ x 48.83 apparently belongs to the Avoyelles Bank of Marksville, title not transferred to Avoyelles Trust & Savings Bank." The officials were apprised of all footages—correct, incorrect, and ambiguous; they knew of the peg eighty-one (81) feet from the Bank's rear wall; they knew of the existence of the concrete curbing and did not see fit to have it mentioned in the deed. The officials were fully aware of the provision in their deed of acquisition, which stated that "said driveway or passage to be located immediately West of the Bank building or ninety-eight (98) feet from the eastern property line of the property herein sold." With all of these facts before the Bank officials and its President being the uncle of the defendant, the deed was worded to recite defendant's eastern boundary as ten (10) feet back of the back wall of the Bank.

It is obvious and self evident that plaintiff intended what was set forth in its Act of Sale, that is, that defendant's eastern boundary would be ten (10) feet from the back wall of the Bank. This wall constituted a monument—a solid monument in existence at the time of sale and in existence today. It is also obvious that plaintiff intended to employ measurements of two hundred and twenty-five (225) feet

for the Mark Street block, thus placing the eastern boundary of defendant's property approximately one hundred and eight (108) feet from the curb corner of Mark and Main Streets.

If there was error on plaintiff's part and it now owns approximately 3.5 feet less than its acquisition of one hundred and seventy-nine (179) feet from Avoyelles Trust and Savings Bank, it is still bound as vendor of defendant to two principal obligations, that of delivering and that of warranting the thing which it sells— seventy-one (71) feet on Mark Street. LSA–RCC, Art. 2474

For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. All costs to be paid by plaintiff.

HAMITER, J., concurs with written reasons.

SUMMERS, J., dissents and adheres to the reasons assigned in the original opinion.

HAMITER, Justice (concurring).

When subscribing to the majority opinion on the original hearing, I was unaware of the notation contained on the Messick plat (prepared for the plaintiff

bank in September, 1937, a short time prior to the sale to this defendant) which read as follows: "Note: Drive way provision made in sale from Avoyelles Trust & Savings Bank to Union Bank of roadway 10' wide at a distance of 98' from S. E. Cor. of lot sold or intersection of Main St. and Mark, *but same is erroneous as about 111.00 feet from said intersection is required to provide for a 10 ft. or roadway using drive way concrete wall as western boundary*—strip remaining on Monroe St. 6' x 48.83 apparently belongs to the Avoyelles Bank of Marksville, title not transferred to Avoyelles Bank & Savings Bank." In my opinion this notation is extraordinarily important in a determination of the present litigation, and it is mainly responsible for my reaching a conclusion different from that which I previously entertained. (Italics mine)

My view now is that had the parties to the instant transfer intended that the concrete curbing was to be Roy's eastern boundary (as is contended herein by plaintiff) a call of 111' from the southeast corner of the Union Bank lot, rather than 108' therefrom, would have been inserted in the deed. This, of course, was not done.

Moreover, in preparing such deed plaintiff's attorney, it seems to me, should have

recited therein that the curbing was to be that eastern boundary.

For these reasons I respectfully concur in the result reached on this rehearing.