425 So.2d 1010 (1983)
ASHLEY ENTERPRISES, INC.
v.
ESPLANADE PLAZA CO., et al.
No. 5-331.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
Rehearing Denied February 17, 1983.
*1011 Elsie B. Halford, Metairie, for plaintiffs-appellants.
Ewell P. Walther, Jr., Kyle Schonekas, Stone, Pigman, Walther, Wittmann & Hutchinson, Dennis M. Ferrara, New Orleans, for defendants-appellees.
Before BOUTALL, KLIEBERT and DUFRESNE, JJ.
KLIEBERT, Judge.
Ashley Enterprises, Inc., d/b/a "Reflections" (hereafter Reflections) brought suit against Esplanade Plaza Co., Inc. and its partners (hereafter collectively called Esplanade) and Buzz Around, Inc. (Buzz Around) for a permanent injunction, an eviction of Buzz Around, and damages allegedly arising out of the breach of the lease between Reflections and Esplanade, and/or breach of a stipulation "Pour autrui" contained in the lease between Buzz Around and Esplanade. After a judge trial, the trial court dismissed Reflections' suit, ordered all litigants to bear the cost of their own experts and assessed the charges ($4,900.00) of a court appointed expert on Reflections, the losing litigant. Reflections suspensively appeals this judgment with both Esplanade and Buzz Around answering the appeal. The principal issue involves an interpretation of the restricted competition covenant contained in the lease between Esplanade and Reflections and of the alleged stipulation "pour autrui" contained in the lease between Buzz Around and Esplanade. Secondary issues are the role of the court-appointed expert and the court's taxing of the expert witness fees. We affirm the trial judge's ruling on all issues.
We first consider the principal issue. On November 27, 1978, Reflections entered into a lease agreement with Esplanade. According to this lease agreement, Reflections was to occupy 1560 square feet of a shopping center, yet to be constructed, owned by Esplanade in Jefferson Parish. Article 6 of the lease agreement provided:

USE OF LEASED PREMISES
SECTION 6.1. The Leased Premises shall be used and occupied by the Tenant solely for a decorating accessories and high quality gift items shop and for no other purpose. The Tenant shall at all times operate its business on the Leased Premises solely under the name Reflections! and shall identify the Shopping Center in all advertising of the business conducted there by the Tenant. The Tenant *1012 intends to use the premises for the sale at retail of a wide variety of accessories for interiors (including furniture, lamps, wall decorative and serving pieces) and other high quality gift articles). The Landlord may allow other tenants in the Shopping Center to sell one or more of the same items as the Tenant sells, but the Landlord agrees that it will not lease space in the Shopping Center to a Tenant whose business includes the sale at retail of a majority of the items that the Tenant offers for sale at the inception of the Lease. (Emphasis ours).
On August 23, 1979, Buzz Around entered into a similar lease agreement with Esplanade. Article 6 of that lease provided:
SECTION 6.1. The Leased Premises shall be used and occupied by the Tenant solely for a Gifts and Greeting Cards Shop and for no other purpose. The Tenant shall at all times operate its business on the Leased Premises solely under the name Buzz Around.
Reflections opened its gift shop on or about July 19, 1979. Within six months of the opening, Buzz Around also opened for business. Thereafter, Ashley filed this suit seeking the eviction of Buzz Around and damages from Esplanade. Buzz Around filed an exception of no cause or right of action grounded in the lack of privity of contract between Reflections and Buzz Around. Thereafter, Reflections amended its petition contending it was the beneficiary of a stipulation pour autrui contained in an addendum to the lease between Esplanade and Buzz Around and, therefore, had a cause of action against Buzz Around despite the lack of privity of contract. The alleged stipulation pour autrui provided as follows:
"We are familiar with the premises adjacent to and on the Hullen Street side of those leased to us, that is, Bay Number 7, which is leased to Ashley Enterprises, Inc., which does business under the name, `Reflections'.
We confirm our understanding that the business conducted by us in Bay Number 5 will not include the sale of more than 20% of the items that Reflections offers for sale in its premises as of this time. This conforms to our original understanding and, to make the lease consistent therewith, the lease is hereby so amended...."
Plaintiff's theories of liability are these:
(1) Esplanade knowingly breached its agreement to restrict competition because it needed to fill its vacant bays to meet commitments to its mortgagee and, hence, is in bad faith and subject to the damages allowed by C.C. Article 1934(2); and (2) Buzz Around agreed not to compete with Reflections in that it would not offer for sale more than 20% of the items offered by Reflections' opening inventory.
At the trial level and here, Reflections contends the true intent of the parties was to prohibit any other gift shop from competing with Reflections in the same shopping center. At the trial, Reflections sought to introduce parol evidence in an effort to support the contention. The trial judge disallowed such evidence, finding that the language of the restricted competition covenant was not ambiguous. Without deciding the true interest of the parties, we agree with the trial judge's decision not to allow parol evidence. Parol evidence is generally held inadmissible to explain, vary, add to, or subtract from the terms of a written agreement. Louisiana Civil Code Article 2276. When the terms of the written contract are susceptible to more than one interpretation or where there is uncertainty or ambiguity as to the provisions of the written agreement, or where the intent of the parties cannot be ascertained, however, parol evidence may be admissible to clarify the ambiguities and to show the intentions of the parties. Such is not the case here. The language employed clearly states that other tenants may sell one or more of the items offered by "Reflections", but may not sell more than a majority of such items sold by "Reflections" at the inception of the lease.
Despite the varying methods used by the experts to determine whether Buzz Around was selling more than a majority of the items being sold by Reflections we see *1013 no ambiguity which would warrant the introduction of parol evidence to determine the intent of the parties.
Reflections sought to prove Buzz Around was selling a majority of items sold by Reflections through the testimony of Dr. Victor Cook who qualified as an expert in the field of marketing and Mrs. Helene Walker who qualified as an expert in accounting. Dr. Cook testified that the two shops were indeed competing with each other but gave few details or specifics in rendering this decision. The majority of his testimony was concerned with the damages aspect of this case. In oral argument counsel for Reflections contends Dr. Cook's function was to compute damages and not to determine whether Buzz Around sold a majority of the items being sold by Reflections.
Mrs. Walker's testimony was to specifically determine whether there was a duplication of items sold. Using her own methods, she concluded that Buzz Around sold 74% of the same items offered by "Reflections". She testified that her method of comparison utilized categorization of items, sometimes disregarding price or quality variances. Her categorization was based solely on her personal belief as to what should or could be considered a like item in the eyes of the consumer. Mrs. Walker admittedly had little marketing training.
Esplanade's expert in marketing, Gordon Joseph, testified that there was not a majority of items of Reflections sold by Buzz Around. He felt that there was no damage to Reflections by Buzz Around's presence in the shopping mall. Mr. Joseph went so far as to say that the two stores may compliment each other in that they both sold gifts but of diverse quality and price. Mr. Joseph concluded there was less than a majority duplication by listing items individually from invoices of both stores. Dr. Thomas O'Conner was submitted and qualified as an expert in marketing for Buzz Around. He also concluded there was no substantial competition between the two shops.
The court appointed as its expert Dr. Joseph Hair, chairman of the Department of Marketing for Louisiana State University. Dr. Hair concluded that Mrs. Walker's comparison was imprecise. He felt that her method of categorization of items was not reliable enough to allow him to conclude there was a substantial duplication of items. In conclusion, Dr. Hair felt that he could not accept Mrs. Walker's findings.
Reflections contends the court's expert functioned improperly and, therefore, his opinion was accorded too great a weight. The trial judge, in well written reasons for judgment, sought to restrict the role of Dr. Hair to the perimeters prescribed in the case of U.S. Oil of Louisiana Ltd. v. Louisiana Power, 350 So.2d 907 (La.App. 1st Cir. 1977), writ denied 351 So.2d 775 (1977). In this case, the court at page 909 said:
"The proper role of the court-appointed expert under LSA-C.C.P. article 192 is to provide the judge with facts and information necessary for a complete and just determination of the issues. It is not the function of that expert to decide or to judge the case, or to engage in any of the corollary functions thereof. Moreover, that expert, as any other expert, clearly should be subject to cross examination by the parties."
The record reflects that Dr. Hair reviewed the lease in question and also the reports of the parties' experts submitted prior to trial. He made an on-the-scene inspection of the shopping mall where Reflections and Buzz Around are located. He additionally was present for the trial in this matter in order to complete his function. Although some of his testimony may have gone beyond the role of an expert and into the role of the court, we find no impropriety in his actions or those of the trial judge that would reflect a misuse of the function of a court-appointed expert.
The issue here turns on the interpretation given of the words "majority of the items" found in the above quoted restricted competition covenant. In making such an interpretation, the jurisprudence uniformly holds that legal agreements have the effect of law between the parties and the courts may enforce them by giving effect to the *1014 true intent of the parties. Union Bank v. Roy, 248 La. 801, 182 So.2d 319 (1966); Texaco, Inc. v. Vermilion Parish School Bd., 244 La. 408, 152 So.2d 541 (1963).
A mere reading of the provision in question here shows the intent of the parties was to confect a provision which would restrict the competition to Reflections. It does not prohibit a lease to another tenant doing business as a gift shop. However, it does prohibit a lease to another tenant who will sell a majority of the same items as that sold by Reflections. Thus, the appropriate analysis must identify items that are similar in a marketing sense, not just a compilation of the items appearing in each store's inventory. All of the marketing experts testifying here agree price and quality are integral factors in deciding whether consumers will substitute one item for another in the course of shopping. If the consumer will substitute one for the other, then the items are competitive. Thus, to determine competitive items under this marketing concept, for a "lamp" to be competitive with another lamp, it must be of comparable quality and value.
In reaching the conclusion that Buzz Around was not selling a majority of the items that Reflections sold, all three marketing experts were in agreement. Mrs. Walker, on the other hand, who had little or no marketing experience, utilized a categorization of items which, for the most part, disregarded price or quality variances. There is ample evidence and reason, therefore, for the trial judge to have concluded as a matter of fact that Buzz Around was not selling a majority of the items being sold by Reflections. We cannot say, therefore, that he committed manifest error in his fact findings or in his legal conclusions.
Additionally, we point out that in order to claim the benefit of a stipulation "pour autrui" or third party beneficiary contract, the party claiming the benefit must show an intent to confer benefits upon him. Louisiana and Southern Life Insurance v. New Orleans Steamship Association, et al, 384 So.2d 594 (La.App. 4th Cir.1980). Here the evidence fails to show any such intention.
The answer to the appeal filed by Buzz Around and Esplanade reasserted claims made against each other prior to the trial in the event either was found liable. By affirming the trial judge's dismissal of Reflections' suit, their claims are of no moment; nor is it necessary for us to consider the arguments made on the damage awards.
The remaining issue on appeal is the expert fees involved. The trial judge had each party deposit with the court an amount which he felt would cover the fees of the court-appointed expert. During the trial, the trial judge directed the parties to put up additional funds for that purpose. After the conclusion of the trial, the money was released to the expert. The judgment of the lower court held Reflections liable for the cost of the expert. We find no error in this regard.
Both Esplanade and Buzz Around allege the trial court erred in not assessing the fees of their experts as costs of the trial to be borne by Reflections, citing LSA-R.S. 13:3666. We note, however, that La.C.C.P. Article 1920 gives the trial judge discretion in regard to taxing costs of a proceeding. Thus, it is at the discretion of the trial judge to decide how he will allot the taxable costs. Usually the costs are taxed to the losing party, however, it is not a mandatory requirement.
Accordingly, the judgment of the trial court is affirmed. Reflections to bear all costs of the appeal.
AFFIRMED.