MILLER, Judge.
Aubrey J. Marceaux filed this suit seeking damages from and to enjoin defendants Simonet Hebert and Angella Hebert from erecting boundary fences without having the boundary judicially determined. The alleged tortious conduct (petition article “six” et seq.) was that defendants had taken possession of a narrow strip of plaintiff’s land located north of defendants’ one acre tract. That one acre, more or less, was described in a boundary agreement executed in September of 1945 by ancestors in title to both parties plaintiff and defendant.
Defendants reconvened seeking damages for plaintiff’s activities on the disputed strip to the north and sought judgment decreeing defendants to be in lawful possession of the lands described in a plat (made part of the reconventional demand) which claimed 1.367 acres for defendants.
The case was called for trial on December 18, 1963 at which time the following stipulation was entered in the record:
“It is stipulated by and between counsel for the plaintiff and counsel for the defendant, that the merits of the case be submitted to the Court for decision, after submission by both counsel of pertinent instruments of acquisition to a common owner, and that the Court will appoint a qualified Civil Engineer as an expert to assist the Court in the establishment of proper boundaries and ownership.
“It is further stipulated that counsel will have ten (10) days in which to file the necessary instruments.”
Pursuant to this stipulation counsel filed copies of the instruments of acquisition and these are in the record.
On April 2, 1965, the Court appointed Frank R. Lyman, a registered Civil Engineer to “make a survey of the properties owned by the parties to this action, Aubrey J. Marceaux, Simonet Hebert and Angela Hebert, located in the Northeast Quarter of the Northwest Quarter of Section 20, *687 Township 12, South Range 2 East, Vermilion Parish, Louisiana, and to make a proces verbal of his findings to this Court.”
Pursuant to this order Mr. Lyman notified the Court and attorneys that he would begin his “field survey on Monday, April 19, 1965 at approximately 9 a. m.” His proces verbal was dated April 27, 1965 and was filed in the record of this suit the following day.
Attached to the proces verbal were prints of his plat of survey — several with an area colored orange (which essentially placed the lines as contended for by plaintiff) representing the area which Mr. Lyman submitted was covered by the boundary agreement; and several others with a different area colored blue (which essentially placed the lines as contended for by defendants except that only one acre was enclosed) representing what Mr. Lyman “believe [d] to be an equitable solution to the dispute.” Tr. 66.
On August 23, 1965 the Court signed an order setting the case for trial on the merits for December 13th, 1965. On that day the Court refused to allow the attorneys to question Mr. Lyman concerning his proces verbal. The following minute entry was entered :
“Aubrey J. Marceaux-Vs-Simonet Hebert.
“Fixed for this day, and by Stipulation of Counsel on December 18, 1963 that at that time the merits of the case was submitted to the Court. The question of Boundaries and ownership to be determined from Instruments of acquisition and report of a Court appointed Engineer and these documents and reports of Engineer having been received the Court takes the matter under advisement. Reserving to all parties any rights they may have as to damages, etc. It is further ordered that the plaintiff deposit with the office of the Clerk of Court the sum sufficient to cover court costs to date, including the Survey.”
The trial court assigned written reasons recognizing defendants’ property to be the area colored orange on Mr. Lyman’s plat, but dismissed plaintiff’s claim for damages. Defendants appealed and plaintiff answered the appeal to request that his right to claim damages be reserved.
The substantial issue is the interpretation of a boundary agreement executed September 29, 1945 by Eve Hebert, defendants’ ancestor in title, and Ulysse Marceaux, plaintiff’s ancestor in title. The description used in this boundary agreement is according to Mr. Lyman “erroneous and cannot be established on the ground.” There was no plat attached to the boundary agreement.
The agreement is as follows:
“STATE OF LOUISIANA ‘ PARISH OF VERMILION. KNOW ALL MEN BY THESE PRESENTS : THAT
“WHEREAS Eve Hebert, wife of Ovey Hebert, is the owner of the following described tract of land situated in the northeast portion of the northeast quarter of the northwest quarter of Section 20, T12S-R2E, Vermilion Parish, Louisiana, to-wit:
“One certain tract of land containing one acre more or less bounded north by public road, south by gravel road, east by public road, and west by Elysse Marceaux, said tract being the tract of land conveyed to Eve Hebert by Joseph Mayo Meaux et al by deed dated February 2, 1933, recorded in Conveyance Book 109, page 451, Entry No. 50780, of the records of said Parish, and also the same land conveyed by Ulysse Marceaux et al to Hebrard Perry in exchange deed dated June 4, 1923, *688 recorded in Conveyance Book 79, page 331, entry No. 37279 of the records of said parish.
“AND, WHEREAS, Ulysse Marceaux, a widower, is the owner of all of the northeast quarter of the northwest quarter of said Section 20, T12S-R2E except said one acre tract owned by Eve Hebert,
“AND WHEREAS, the said Ulysse Mar-ceaux and Eve Hebert and husband, Ovey Hebert, desire to more definitely identify the land owned by the said Eve Hebert and for that purpose have executed this instrument,
“NOW, THEREFORE, the said Eve Hebert, Ovey Hebert and Ulysse Marceaux hereby agree that the land in the northeast portion of the northeast quarter of the northwest guarter of said Section 20 which is owned by Eve Hebert is described as follows, to-wit:
“A certain tract of land containing one acre, more or less located in the northeast portion of the northeast quarter of the northwest quarter of Section 20, T12S-R2E, Vermilion Parish, Louisiana, being more particularly described as follows :
“BEGINNING at a point on the east line of the northwest quarter of said Section 20, which point, shall be 132 feet in a southerly direction from the northeast corner of the northwest quarter of said Section 20;
“THENCE N 89° 21' W and parallel to the north line of Section 20, 183.4 feet to a point;
“THENCE S 3° 03' E 21.6 feet to a fence corner;
“THENCE continuing S 3° 03' E with a fence 73.4 feet to a fence corner;
“THENCE continuing S 3° 03' E 86.0 feet to the center of a gravel road;
“THENCE Southeasterly with the meanders of the center line of said gravel road to a point on the east line of the northwest quarter of Section 20;
“THENCE N 00° 47' W 366.7 feet with said quarter section line to the place of beginning.
“For the purpose of carrying out the purposes of this agreement and setting forth of record the fact that the tract of land acquired by Eve Hebert from Joseph Mayo Meaux et al in the deed hereinabove identified is the one acre tract lastly herein-above described, the said Ulysse Marceaux hereby sells, conveys and quitclaims unto the said Eve Hebert all of his right, title and interest in and to said one acre tract of land and the said Eve Hebert and Ovey Hebert hereby sell, quitclaim and convey unto Ulysse Marceaux all of their right, title and interest in and to the northeast quarter of the northwest quarter of Section 20, T12S-R2E, save and except the one acre tract lastly hereinabove described.
“DONE AND SIGNED this 29th day of September, 1945, in the presence of the undersigned competent witnesses.”
Mr. Lyman’s proces verbal is as follows:
“April 27, 1965
“Re: Proces Verbal
Aubrey J. Marceaux vs. Simonet Hebert and Angella Hebert, No. 21162
15th Judicial District Court, Vermilion Parish, La.
“Honorable Carrol L. Spell Judge
15th Judicial District Court Vermilion Parish, La.
Dear Judge Spell:
“Pursuant to your order of 2 April 1965 I have surveyed the property involved in the above titled dispute and submit herewith my findings.
“After a study of the record of this case I began my field survey on Monday morning April 19, 1965. I first recovered the marker (a U/2" iron shaft) at the northeast corner of Section 20, T-12-S, *689 R-2-E, Vermilion Parish, La. This marker was shown on the original survey of the Town of Kaplan made by W. W. Babitt, Civil Engineer. In the year of 1930 I had occasion to recover this marker and so have personal knowledge of its long time existence and recognition as the marker for the northeast corner of Section 20. To be certain that this marker did not conflict with established property lines to the south I measured to the south as far as the south line of Section 20 and found sufficient land to satisfy the called distance shown on the original township plat.
“Thence from the northeast corner of Section 20 I ran, on an offset to the north of 17.8 feet, N 88° 12' W 2,686.5 feet (the bearing and distance called for on Babbitt’s survey) and set a 1" iron rod 17.8 feet south for the northeast corner of the northwest quarter of Section 20.
“I thence established a point on the east line of Avenue A or Fredricks a distance of 1,110 feet, measured along the east line of Fredricks Ave. from the south line of Mill Street in the Town of Kaplan. From which I ran easterly parallel to the railroad 280.0 feet to the west line of LeMaire Avenue, thence southerly along the west line of LeMaire Avenue to intersect my offset line along the north line of Section 20.
“I then located the center line tangents of the Kaplan-Cow Island Highway and the fences existing around the property of Simonet and Angella Hebert in Section 20. On Tuesday afternoon April 20, 1965 Mr. O. H. Deshotels, Jr. visited me at the site of the survey. I asked him if he knew anything of the history of the existing fence line on the west side of the Hebert property in Section 20. Mr. Des-hotels informed me that this fence line as now existing was recognized and was not being contested.
“The one acre tract of land owned by Simonet and Angella Hebert was first described as one superficial square acre bounded on the north and east by public roads and on the south by Marceaux. The road on the north has since been abandoned and another road established on the south.
“On September 29, 1945 Ulysse Mar-ceaux, Eve Hebert and Ovey Hebert entered into a boundary agreement Act No. 85469, records of Vermilion Parish, La. This agreement contains a description that is erroneous and cannot be reestablished on the ground. No plat of survey is attached to this act, however, in the folio of the case is a reproduction of a sketch said to be the basis of the description in the agreement. It is difficult to establish with certainty the boundaries shown on this sketch, however, I have to the best of my ability plotted the lines and have colored this area orange on one set of prints of my plat. The information shown on the Humble Oil Company’s sketch is misleading and it is doubtful that all of the parties to the agreement had a clear understanding of the facts.
“If it is the intent to set the boundaries of tract owned by Simonet and Angella Hebert in Section 20 so as to limit its size to exactly one acre I would suggest that the north boundary be affirmed as the north line of Section 20, the west boundary be established as the existing fence line, the east boundary be established as the existing fence line along the west right-of-way limit of the public road and that the southern boundary be set within the right-of-way of the old graveled road so as to make the area of the tract equal one acre.
“Attached hereto and made a part hereof are five copies of my plat of survey, dated 23 April 1965, with the area covered by the boundary agreement colored in orange and five copies showing the area which I believe to be an equitable solution to the dispute colored in blue.
“Very truly yours,
“/s/ Frank R. Lyman”
*690 The relevant part of Mr. Lyman’s survey which was attached to the proces verbal is reproduced here. We have indicated the area colored orange and the area colored blue,

The trial court found as a fact that Exhibit D-5 was the basis for the “erroneous” description used in the September 1945 boundary agreement to “more definitely identify the land owned by” defendants’ ancestor in title. We agree. This Exhibit (the Humble plat dated 9/19/45) was furnished by defendants to Mr. Lyman (and *691 therefore to the Court) with the statement that it “was used in connection with the so-called boundary agreement between the parties”. Tr. 52.
Mr. Lyman based his orange projection of the boundaries on the sketch on Exhibit D-5 stating:
“It is difficult to establish with certainty the boundaries shown on this sketch, however, I have to the best of my ability plotted the lines and have colored this area orange * * *. The information shown on the Humble Oil Company’s sketch is misleading and it is doubtful that all of the parties to the agreement had a clear understanding of the facts.” Tr. 65. (Proces Verbal, paragraph 7)
The relevant portion of D-5 is reproduced here.

A comparison of the description in the 1945 boundary agreement with the orange projection will show that the orange projection was not based on that description.
The starting point in the 1945 boundary agreement description is:
“BEGINNING at a point on the east line of the northwest quarter of said Section 20, which point, shall be 132 feet in a southerly direction from the northeast corner of the northwest quarter of said Section 20
The starting point on the orange plat is NOT on the east line of the northwest quarter of section 20, but instead is 28.3 feet west. Neither is the starting point 132 *692 feet south of the northeast corner of the northwest quarter of the section. Instead it is approximately 20 feet south of that point.[1]
The first call of the boundary agreement is THENCE westerly
“parallel to the north line of Section 20, 183.4 feet to a point;” (which point we shall refer to as “point B”).
The next call
“THENCE [south] 21.6 feet to a fence corner
makes it clear that “point B” is 21.6 feet north of an existing fence corner. But “point B” on the orange plat is not related to any fence corner. On the contrary “point B” on the orange plat is located approximately 16 feet east of the existing fence corner and is located on the existing fence line.[2]
The three calls (in the 1945 boundary agreement) for the west boundary of defendants’ property specifically follow and or begin or end on the existing western boundary fence, and indicate a total west boundary of 181 feet. Yet, the orange projection of this west boundary does not touch the existing fence. Instead it is located approximately 25 feet (on the average) east of the existing fence.[3]
The orange projection follows the cen-terline of the old gravel road as called for in the 1945 boundary agreement. But the call (in the boundary agreement) for the eastern boundary line is for 366.7 feet and the orange projection gives an eastern boundary which scales 425 feet in length.[4]
The orange projection was not based on the erroneous description in the September 1945 boundary agreement. Mr. Lyman so indicated in the seventh paragraph of his proces verbal.
Turning then to Exhibit “D-5” on which the orange projection must have been based. The Humble plat located the northeast corner of the northeast quarter of Section 20, some 132 feet too far north. Measuring south 132 feet from this corner (as shown on “D-5”) you reach the south edge of the east-west “Dirt Road” shown as the north boundary of the tract located east of defendants’ property. When the property (which is the subject of this dispute) was first conveyed (in 1923) it was bounded on the north by (the continuation of that dirt) “public road”, but in 1924 this public road bounding the Hebert tract on the north was abandoned (when the gravel road on the south was built).
Mr. Lyman’s plat shows that the correct location of the northeast corner of the northwest quarter of Section 20, is along the south boundary of this Dirt Road. This same line is depicted on Exhibit “D-5” as being 132 feet south of the northeast corner of the northwest quarter of Section 20. Thus when looking at “D-5” if you use the point of beginning as called for in the boundary agreement, you will come south 132 feet from the “D-5” corner and one therefore starts the north boundary of the disputed tract at the continuation of the south boundary of the east-west “public road.” This is exactly the north boundary used on the blue projection of the boundaries, which projection was recommended by Lyman as “an equitable solution” to the dispute. This is in keeping with the original north boundary (also mentioned in every subsequent conveyance and in the *693 1945 boundary agreement) which was stated to be a “Public Road”.
Just as important to a proper location of this north boundary is the fact that the blue projection brings “point B” to a position 21.6 feet north of an existing fence corner. This complies with the call in the boundary agreement and with the boundary sketch on “D-5”.
We find that the parties intended to recognize as the north boundary of the Hebert tract, the line so designated on the blue projection. This conclusion is supported by plat “D-5” in that the north boundary of the blue projection is located where “D-5” showed it to be.[5]
The west boundary on the blue projection then courses south along the existing fence (as called for in the 1945 boundary agreement, and as shown on the boundary sketch on “D-5”). The discrepancy in the direction of the calls as distinguished from the direction of the fence is accounted for as another error in the Humble plat. This 1 y2 degree difference in direction is not surprising when it is noted that the Humble survey missed an important corner by 132 feet in one direction and 28 feet in another direction.
We find that the parties intended to recognize the existing west fence as their boundary. This conclusion is supported by the fact that the sketch of the boundaries on “D-5” follows the fence, and the description of the west boundary in the 1945 boundary agreement is tied to this fence. Furthermore, Mr. Lyman understood that all parties conceded that the west boundary was settled as the existing fence. Additionally, the trial judge expressly found that the west fence was the line intended.[6]
We find that the calls in the boundary agreement and the sketch on “D-5” clearly evidence the parties’ intention to recognize the centerline of the old gravel road as the south boundary.
The south boundary on the blue projection did not go as far south as the center of the old gravel road. Mr. Lyman explains that the south boundary was located to make the blue projection of defendants’ tract exactly one acre in size. (Proces verbal paragraph 8). If the west boundary on the blue projection had continued south to the centerline of the old gravel road (as called for in the 1945 boundary agreement and as shown on the “D-5” sketch), defendants’ west boundary would have almost exactly measured the 366.7 feet called for in the 1945 boundary agreement.
By extending both the eastern and western boundaries of the blue projection southerly to the centerline of the old gravel road, the acreage in the blue projection is increased from the one acre computed by Mr. Lyman to 1.06 acres as measured by a Plan-imeter.
The recognition that the Heberts have 1.06 acres as a result of the 1945 boundary agreement is in accord with the description which stated that the Heberts owned “A certain tract of land containing one acre, more or less * *
Again we state that we are impressed by the fact that the sketch of the boundaries on Exhibit “D-5” locates the north boundary of defendants’ tract as a continuation of the south boundary of the east-west Dirt Road which was (in 1945) still in existence east of defendants’ tract. This landmark is too important to ignore. The parties were not likely to understand the compli *694 cated survey calls used in their boundary agreement. This was specifically stated by Mr. Lyman. But the sketch of the boundaries on “D-5” showing that the north boundary was adjacent to the south boundary of the abandoned public road is too clear to ignore. Additionally, this north line on Exhibit “D-5” was located 21.6 feet north of the existing fence corner. This too is related to a fixed point on the ground which the parties could readily locate. Their use of these points of reference establishes their intention. Furthermore, the point of beginning on “D-5” is 132 feet south of a point erroneously located on “D-5” as being 132 feet too far north. By coming south 132 feet on Exhibit “D-5”, one finds the north boundary to be exactly the one contended for by defendants (the one shown on the blue plat).
One of the key findings of the trial court in support of the orange projection was that “It must be noted that both Eve Hebert and Ulysse Marceaux knew and intended that Ulysse Marceaux was to own land north of Eve Hebert.” The writer finds no evidence to support this unless it is that D-5 (Humble’s plat) erroneously shows the north line of Section 20 to be 132 feet north of its correct position. The fact that the erroneous plat credits plaintiff’s ancestor in title with an extra 132 feet of land (which a correct plat shows that he does not own) cannot be held to be a declaration of intention that the parties intended to lower the north boundary of defendants’ tract. This is particularly true, when the parties (1) did not order the survey which they used in their boundary agreement and (2) the sketch on which the boundary agreement was based shows a boundary tied in with two well established landmarks. The sketch shows the north line 21.6 feet north of an existing fence corner, and adjacent to the south line of the abandoned Dirt Road.
The most impressive reasoning to support the trial court judgment is that the boundary agreement relocated defendants’ boundary further to the south, and therefore it would be expected that defendants would give up some land on the north.
This argument assumes that defendants’ tract did not front the road which bounded it on the south, and that it would be advantageous to have frontage on that road. While it is true that the 1923 deed from Ulysse Marceaux to defendants’ ancestor in title did not describe the south boundary as a public road, we must note that the road was not so located in 1923. The road on the south was built in 1924. Accepting the north, east and west boundaries of any one of the plats, it would be impossible to plat [7] a tract of land composed of one acre without giving substantial frontage on the road located south of the tract. So we must conclude that defendants’ ancestor in title did have an outlet on that gravel road prior to the 1945 boundary agreement.
Appellee’s impressive argument is further answered in that the call in the boundary agreement (as a starting point 132 feet south of a point erroneously located in “D-5” 132 feet too far north) ; the sketch of the boundaries on “D-5” (which shows the north line adjacent to the abandoned road) ; and the call in the boundary agreement and the sketch on “D-5” (which locate the western edge of the north boundary 21.6 feet north of the existing fence) clearly show that defendants’ ancestor in title did not intend to give up land west of his western fence or land south of the abandoned east-west public road.
The Court must seek to give legal effect to the 1945 boundary agreement according to the true intent of the parties. LSA-C.C. Article 1945; Union Bank v. Roy, 248 La. 801, 182 So.2d 319 (1965); Tidewater Oil Company v. Bihn, 220 So.2d 507 (La.App. 3d Cir. 1969).
Our analysis of the plats taken together with the description in the boundary *695 agreement and the sketch on “D-5” establishes that the trial court’s judgment was manifestly erroneous in decreeing that the orange plat constituted the boundaries of defendants’ tract.
On the contrary the blue projection more closely traces the calls in the agreement and is more in keeping with the sketch on “D-5”, except that Mr. Lyman expressly limited his blue projection to include an area of “exactly one acre”. The 1945 boundary agreement did not limit the tract to one acre and we therefore recognize the centerline of the old gravel road as the south boundary.
Plaintiff-appellee contended alternatively that if the trial court’s judgment is not affirmed, then there should be judgment recognizing that defendants’ acre is one square acre. This argument was not pursued, and we find it to be without merit.
Plaintiff-appellee’s request to reserve his right to claim damages is no longer relevant.
Defendants requested that the case be remanded to afford an opportunity to take the testimony of the Civil Engineer. This was opposed by plaintiff. Although we believe that the 1963 stipulation did not prevent counsel from questioning Mr. Lyman concerning his survey and the basis for his conclusions, we agree that there is sufficient information in the record to enable the Court to find the intent of the parties.
The judgment of the trial court is annulled. It is ORDERED, ADJUDGED and DECREED that Simonet Hebert and Angella Hebert have judgment against Aubrey J. Marceaux recognizing that the Heberts own:
One acre, more or less, located in the northeast portion of the northeast quarter of the northwest quarter of Section 20, T-12-S, R-2-E, Vermilion Parish, being more particularly described as follows:
Beginning at a point on the north line of Section 20, 44.2 feet west of the northeast corner of the northwest quarter of Section 20, T-12-S, R-2-E;
Thence westerly along the north line of Section 20 a distance of 176 feet;
Thence south 4° 3T west to the center-line of an old gravel road;
Thence southeasterly along the meanders of the centerline of the gravel road to a point on the centerline of the gravel road, which point is south 1° 09' west of the point of beginning;
Thence to the point of beginning.
All claims for damages are dismissed. Plaintiffs are to pay all costs of court, both on trial and appeal.
Reversed and rendered.

. As explained hereinafter, the boundary agreement’s point of beginning when related to Exhibit “D-5”, is 132 feet south of a point incorrectly located on Exhibit “D-5” as 132 feet too far north. Thus the north line on the blue projection is correct.

. “Point B” on the blue projection is located 21.6 feet north of the fence corner.

. The west boundary shown on the blue projection is tied to the western fence, as required by the 1945 boundary agreement and “D-5”.

. If the eastern boundary on the blue projection extended south to the center-line of the old gravel road, it would have a length of 366 feet.

. This is shown in three ways. (1) The north line abuts the continuation of the “Dirt Road” recognized as the north boundary. (2) The western end of the north boundary terminates at a point 21.6 feet north of a fence corner. (3) The north line is 132 feet south of the point erroneously located on “D-5” as being 132 feet too far north.

. The trial court specifically stated that “the Court must necessarily conclude that the existing fence line on the west was the line intended * * * ” Tr. 71. Nevertheless, the Court disregarded this finding by accepting the orange projection.

. Except by angling the south line as was done by Mr. Lyman with the blue projection.